CHARLES ROBINSON et al. *v.* JAMES P. FRERET, Sheriff, et al.

Construction of a lease.

Petition for injunction to stay a sale, in the answer to which damages were asked on the injunction bond against principal and sureties. *By the Court :*

The injunction does not arrest a judgment for the payment of money; the Act of 1831 was, therefore, inapplicable, and the surety was not a party to the suit. The answer does not contain a reconventional demand for damages arising *ex delicto*—but sets up a claim for damages on the bond against the principal and surety—which cannot be done in the same suit in which the injunction was granted, unless it is a case arising under the provisions of the Act of 1831, where a judgment for money is enjoined.

APPEAL from the First District Court of New Orleans, *Robertson*, J. *Durel* and *Roselius*, for plaintiffs and appellants. *Mott & Fraser*, and *Hunton & Bradford*, for defendants.

OGDEN, J. (VOORHIES, J., and BUCHANAN, J., absent.) In a suit of the Pelican Dry Dock Company, against *Robinson, Hyde & Mackie*, in which the company, among other things, demanded the sale of a lease of certain lots of ground in Algiers, for a division of interest between the parties; a judgment was rendered by consent, decreeing the sale of the lease of the dock-yard at which the dock of the company was moored. *Hyde & Mackie*, after the judgment was rendered, sold their interest in the lease to *Penneyar & Martin*, and they, in conjunction with *Robinson*, applied for and obtained an injunction to prevent the sale of the lease, which was advertised to be made by the Sheriff, in pursuance of said judgment. The plaintiffs state, in their petition, that they object to a sale, as it would enure to their great damage, and their right to the injunction is placed, in argument, on the ground, that the defendants, the Pelican Dry Dock Company, have no joint interest in the lease, and that no right of theirs was involved in the sale which it is represented in the petition for injunction, was ordered for the purpose of settling the partnership differences between *Robinson, Hyde & Mackie*. The lease of the ground from *J. B. Oliver*, agent, &c., was made by notarial act, and after setting forth that the lessors have leased the premises to *Robinson, Hyde & Mackie*, at an annual rent of two thousand dollars for the term of six years, with a privilege to the lessors of prolonging the lease at their option for a further period of four years, the act goes on to recite, that the chairman of the board of managers of the Pelican Dry Dock Company had intervened in the act, and declared that it had been agreed between them and the lessors, that the sectional floating dry dock of the company, should be located in front of the lots thus leased, with the privilege and right of the company to use the same for the purpose of carrying out its operation during the term of the lease and the renewal, if any, of the same, on the condition that the company contribute for one-half of the rent, as stipulated in the lease. Immediately after that declaration by this party intervening in the act, is a clause in the following words : "And that accordingly acting as aforesaid, he does hereby bind and obligate the said Pelican Dry Dock Company to pay punctually, in the manner above expressed, the one-half of the aforesaid rent to be paid by the above named lessees; and hereby furthermore binding the said company unto and in favor of the above named lessors, as security for the said lessees, to the extent of one-half of the rent afore-

said ; all of which is hereby accepted by the said *Jean Baptiste Oliver*, in his said capacity."

The record is extremely voluminous, embraces other matter having a connection with the subject, but which we omit to state, as they are not material for properly understanding the question to be decided, which relates to the proper construction of the above clause in the lease. It is conceded, that if under that clause in the lease, the defendants contracted the obligation of sureties for *Robinson, Hyde & Mackie*, they had such an interest in the lease as entitled them to have it sold. We consider that, taken in connection with other parts of the act, it evidences a sub-lease by *Robinson, Hyde & Mackie*, to the defendants, of such portion of the premises as should be necessary to locate their dock and carry out its operations, for which the company bound themselves in favor of the lessors, to contribute one-half of the annual rent; it further evidences the assent of the lessor to this sub-lease, on the condition, that to the extent of one-half of the annual rent for the whole term, the company should be responsible to the lessor as the security of the lessees ; so that, if from any cause the sub-lease should be afterwards rescinded and the company released from their obligations in favor of the lessees, they should still remain bound and liable to the lessor as the securities of the lessees, for one-half of the rent. The lessor had a right to impose this as a condition of his assent to the sub-lease, and it is expressed in clear and unequivocal language. The company did not bind themselves to pay to the lessor one-half of the annual rent—the obligation to pay the one-half of the rent was an obligation contracted in favor of the lessees as the consideration for the sub-lease of such portion of the premises as was necessary to carry on this business of the company. The clause by which the company furthermore bind themselves as sureties for the lessees, for one-half of the rent, shows that the parties did not understand that a direct obligation was contracted by the company in favor of the lessor to pay half the rent—the suretyship on the part of the company, so far as the lessor was concerned, was the real obligation entered into in substance as well as in form, and while we agree with the counsel for the plaintiffs, that the denomination of a contract by a particular name, does not necessarily determine its true character, we think it is clear that the parties in this instance, contemplated precisely such a contract as they styled this to be. It is further to be added, that the sub-lease did not exclude the lessees from the employment of such portion of the premises, as was not required for the business of the company, and that there was therefore such a joint interest in the lease, as the lessors acknowleged, when they consented to a judgment being entered up on the motion of the defendants, and in conformity with the prayer of their petition for a sale, to effect a division of interest between them. We think there was no ground for the injunction by which the sale was arrested. The defendants have asked for an amendment of the judgment of the court below in their favor, awarding them damages as claimed in their answer. It is averred in the answer, that the injunction was vexatious, illegal and wrongful, and had caused damages to the defendants in the sum of $500, for which judgment is prayed against the plaintiff and their sureties in the injunction bond *in solido*.

The injunction did not arrest a judgment for the payment of money—the Act of 1831 was therefore inapplicable, and the surety was not a party to the suit. The answer does not contain a reconventional demand for damages, aris-

ing *ex delicto*, but sets up a claim for damages on the bond, against both principal and surety, which cannot be done in the same suit, in which the injunction was granted, unless it is a case arising under the provisions of the Act of 1831, when a judgment for the payment of money is enforced. We will, however, amend the judgment so far as to reserve to the plaintiffs the right of suing for damages in a separate action.

It is therefore ordered and adjudged, that the judgment of the court below be amended, by reserving to the plaintiffs the right to sue for damages for the wrongful issuing of the injunction ; and that so amended, the judgment of the court below be affirmed, with costs in both courts.