(137 So. 46)

ROBERSON et al. v. PIONEER GAS CO.
No. 31275.

July 17, 1931.

Rehearing Denied Oct. 6, 1931.

Theus, Grisham, Davis & Leigh, of Monroe (Shotwell & Brown and McHenry, Montgomery, Lamkin & Lamkin, all of Monroe, of counsel), for appellant.

J. Norman Coon, of Monroe, for appellees.

Madison & Madison, of Monroe, amicus curiæ.

O'NIELL, C. J.

This is a suit to declare an oil and gas lease expired as to 85 acres of the 125 acres of land leased. The district court gave judgment for the plaintiffs; and the defendant has appealed.

The facts are not disputed. On the 8th of January, 1926, the plaintiffs, being the owners of a tract of land containing 125 acres, in Ouachita parish, leased the land to T. J. Sandridge, trustee, for the production of oil and gas. The tract consisted of the N. E.¼ of S. E.¼ of Sec. 10, and 85 acres in the S. W.¼ of Sec. 11, described as beginning at the southwest corner of the section and running thence east, on the south boundary of the section, 25.21 chains, thence N. 20° W. 33.64 chains, to the south bank of Bayou DeSaird, thence along the south bank of the bayou to the west boundary of the section, and thence south, on the section line, to the point of beginning; the sections being in Tp. 18 N., R. 4 E. The consideration for the lease was that the lessee should pay one-eighth royalty for any and all oil produced and saved from the premises; and $200 per year for each gas well until the gas should be utilized or sold off of the premises, and thereafter one-eighth of the value of the gas. The term of the lease was five years, commencing on the 8th of January, 1926, with the stipulation that, if the lessee should fail to commence the drilling of a well on or before the 8th of January, 1927, the lease would terminate, unless the lessee paid or tendered to the lessors before that date $125 as rental for the privilege of deferring the commencement of a well for twelve months from that date; and in like manner the lessee had the privilege of deferring the commencement of a well by paying the rental of $125 before the expiration of each of the five years. It was stipulated that, if oil or gas should be produced by the lessee at any time within the five years, the lease should remain in force as long as oil or gas would be produced. The contract contained the following clause, which this court decided in Swope v. Holmes, 169 La. 17, 124 So. 131, "made the lease a divisible one," viz.:

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is hereby expressly allowed —the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns; but no change in ownership of the land or assignment of rentals or royalties shall be binding until after the lessee has been furnished with a written transfer or assignment, or a true copy thereof; and it is hereby agreed in the event this lease shall be assigned as to part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which said lessee or assignee thereof shall make due payment of said rental."

On the 8th of February, 1926, T. J. Sandridge, trustee, assigned the lease to the Pioneer Gas Company; and, on the 14th of October, 1930, the Pioneer Gas Company assigned to the firm of Pipes & Mack, composed of George D. Pipes and W. T. Mack, the lease in so far as it covered the 40 acres described as N. E.¼ of S. E.¼ of Sec. 10. The consideration paid for the assignment was $2,-500 cash.

In November, 1930, Pipes & Mack completed the drilling of a profitable gas well on the 40 acres of land on which the lease had been assigned to them. The well produced—and was producing at the time of the trial of this case—18,000,000 cubic feet of gas per day; on which gas Pipes & Mack paid to the original lessors, plaintiffs in this suit, the royalty stipulated in the contract of lease. There was no well drilled, nor attempt to drill a well, on the remaining 85 acres of land, on which the Pioneer Gas Company retained its lease. This suit was filed on the 21st of January, 1931, sixteen days after the expiration of the five years' term of the lease.

The contention of the defendant is that the drilling of the gas well by Pipes & Mack on the 40 acres of land, on which the lease had been assigned to them, kept the lease in force on the remaining 85 acres on which the defendant had retained its lease.

Counsel for the defendant in this case perhaps recognizing the distinction which this court had recognized in Smith v. Sun Oil Co., 165 La. 907, 116 So. 379, between a sublease and an assignment of a lease, pleaded, and undertook to prove, that the consideration for the assignment of the lease on the 40 acres of land, to Pipes & Mack, was, not only the payment of the $2,500 but also an obligation on the part of Pipes & Mack, in favor of the Pioneer Oil Company, to drill a well on the 40 acres of land, for the purpose of keeping the lease in force on the whole tract of 125 acres. The defendant, therefore, averred in its answer to the suit that it was "by error and inadvertence" that the parties failed to include in the written contract the stipulation that Pipes & Mack were under obligation to the defendant to drill a well on the 40 acres of land before the expiration of the five years' term of the lease. The witnesses whom the defendant called to the stand to prove that Pipes & Mack were under obligation to the defendant to drill the well on the 40 acres of land before the expiration of the term of the lease were T. J. Sandridge and W. T. Mack, who were the negotiators in the transaction between the defendant and the firm of Pipes & Mack. Sandridge was the president and a member of the board of directors of the Pioneer Gas Company, and Mack was the junior member of the firm of Pipes & Mack. Counsel for the plaintiffs objected to the introduction of testimony to contradict or enlarge the terms of the written contract; but the judge allowed the evidence to be introduced subject to the objection. Whether the objection was well founded or not well founded is a matter of no importance, because both witnesses testified that the following clause in the instrument spoke for itself, and was the only agreement between the parties, in that respect, viz.: "The said assignee agrees to faithfully carry out all the provisions of the original lease in so far as it applies to that portion of tract conveyed." There was no obligation on the part of Pipes & Mack with regard to keeping the lease in force on the 85 acres of land on which the defendant retained its lease. Mr. Mack testified, and Mr. Sandridge did not contradict the statement, that Pipes & Mack would not have been answerable to the defendant if Pipes & Mack had not drilled a well on the 40 acres of land, but would have lost merely the $2,500, which they had paid for the assignment of the lease on the 40 acres of land.

Our opinion, therefore, is that the transaction between the defendant and Pipes & Mack was merely an assignment of the lease on the 40 acres of land, and not a sublease. The reason for that is that the defendant thereby disposed absolutely of its interest in the lease on the 40 acres of land, and

left no contractual relation whatever between the parties, or obligation on the part of the assignee in favor of the assignor. If the Pioneer Gas Company had retained an overriding royalty, or excess royalty, to be paid by Pipes & Mack to the Pioneer Gas Company, in addition to the one-eighth royalty to be paid by Pipes & Mack to the original lessors, the contract between the Pioneer Gas Company and Pipes & Mack would have been a sublease, and not merely an assignment of the lease on the 40 acres of land. See Smith v. Sun Oil Company, 165 La. 907, 116 So. 379, 380, and Johnson v. Moody, 168 La. 799, 123 So. 330. The distinction between an *assignment of a lease* and a *sublease* is that, in an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased— by imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor. Robinson v. Freret, 9 La. Ann. 303; Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33, 124 Am. St. Rep. 456; Rev. Civ. Code, art. 2725; Code Napoleon, art. 1717; Baudry-Lacantinerie, vol. 20, p. 616, No. 1052 and 1053; Beaudant, p. 374, No. 531 and 532; Marcade, vol. 6, p. 112; Aubrey et Rau, vol. 5, p. 336. The reason why an obligation to pay an overriding royalty, or excess royalty, in a transfer of a lease, either in whole or in part, and even though the transaction be called an assignment or a sale of the lease, characterizes the transaction as a *sublease*, and not merely an assignment, is that, in oil and gas leases, under the settled jurisprudence of this state, the payment of a royalty is the payment of rent, and is not the payment of a price for the oil or gas rights, as if

they were sold. See Spence v. Lucas, 138 La. 763, 70 So. 796; Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373. In Smith v. Sun Oil Company, and in Johnson v. Moody, supra, we said that the obligation to pay an overriding royalty, in the contract which, in each of those cases, the parties called an assignment, was imposed upon the so-called assignee "under penalty of reversion" to the original lessee, or sublessor; but we did not use the term "reversion" in the technical sense in which it is used at common law. The reversion which we had in mind was merely the reversion of the right of occupancy or use of the property; because a contract of lease, under the civil law, unlike the common law in that respect, does not convey to the lessee, temporarily, a title to the property leased, but conveys only the right to the use or enjoyment of the property. Rev. Civ. Code, arts. 2669, 2674; Logan v. State Gravel Co., 158 La. 105, 103 So. 526.

The effect of the assignment of the lease on the 40 acres of land, to Pipes & Mack, was to divide the original lease into two leases, by making a lease between the plaintiffs, as lessors, and Pipes & Mack, as their lessees, under the terms and conditions stipulated in the original lease. What Pipes & Mack did, or failed to do, to keep their lease in force on the 40 acres of land, could not affect the lease which the Pioneer Gas Company retained on the remaining 85 acres of land. That is how this court construed a clause in the contract in question in Smith v. Sun Oil Company, supra, which clause was similar to the "divisibility" clause in the contract in this case; and that is how we construed this identical clause in the contract in question in Swope v. Holmes, 169 La. 17, 124 So. 131, viz.: "The privilege of assigning in whole or in part is

hereby expressly allowed, * * * and it is hereby agreed in the event this lease is assigned as to part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which said lessee or assignee thereof shall make due payment of said rental."

In Smith v. Sun Oil Company, after quoting the paragraph of the contract which made the lease a divisible one, we said:

"The paragraph which we have quoted gave the original lessee the right to divide the lease into two or more leases, by assigning the lease on any part or parts of the 200 acres of land; and, if the assignment to Elliott was in fact and in law an assignment only, and not a sublease, the production of oil by Autrey, on the 20 acres of land, and the payment of royalties thereon, did not keep the original lease in force on the 180 acres retained under lease by the Sun Oil Company. Our opinion, however, is that the so-called assignment made by the Sun Company to Elliott was in fact and in law a sublease, and not merely an assignment, and, therefore, that the operations carried on by Autrey on the 20 acres subleased to Elliott inured to the benefit of the sublessor, and kept the lease in force on the whole 200 acres of land. The fact that the Sun Company, as sublessor, and Elliott, as sublessee, in their contract, used the words, 'grant, convey, transfer and assign,' did not, of itself, make the contract an assignment merely, or deprive it of the character of a sublease; for there were several stipulations in the contract which made it, essentially, a sublease, and not merely an assignment. Every

sublease is, in a sense, an assignment, but every assignment of a lease is not a sublease."

That decision was affirmed expressly in Johnson v. Moody, 168 La. 799, 123 So. 330. and the doctrine was affirmed in Swope v. Holmes, 169 La. 17, 124 So. 131.

It is argued for the appellant that what was said in Smith v. Sun Oil Company, with regard to an assignment of a lease was not necessary for the decision, after it was determined that the contract in question was not an assignment, but a sublease. Hence the attorneys for appellant invoke the rule stated in Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 758, 91 So. 207, 209, that the opinion of a court is authority only in so far as the ratio decidendi is necessary for the decision of the issue involved in the case. It is true that the ratio decidendi in Smith v. Sun Oil Company was that the contract in question was a sublease, and not merely an assignment of the lease on a part of the land originally leased; but the reason why we were compelled to determine, from the nature of the contract, whether it was a sublease or only an assignment, was that we were of the opinion, which we expressed very fully, that there was a difference between the effect of a sublease and the effect of an assignment— particularly because of the clause in the original contract of lease, which, in effect, made the lease dividable into two or more leases, by an assignment or assignments of the lease in so far as it affected only a part or parts of the land originally leased. The discussion of that subject in the opinion, therefore, was not obiter dictum, or unnecessary for the decision; which was rendered with great care, and left no room for doubt about the opinion of this court on the subject dealt with. Its pronouncements have been affirmed by this court, and have remained for three years and

six months as a guide for persons dealing in oil and gas leases, subleases, and assignments of leases. The decisions of the highest court of a state, on the subject of oil and gas leases, or mineral rights, establish rules of property; and they should not be reversed, even though a contrary rule might be deemed more logical, unless it be by an act of the Legislature. Farmer's Heirs v. Fletcher, 11 La. Ann. 142; Cunningham v. Steidman, 133 La. 44, 62 So. 346; Minnesota Mining Company v. National Mining Company, 3 Wall. (70 U. S.) 332, 18 L. Ed. 42; Truskett v. Closser, 236 U. S. 223, 35 S. Ct. 385, 59 L. Ed. 549; Guffey v. Smith, 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856. In the latter case it was said:

"Decisions of the state courts by which it is settled that an oil and gas lease in the form in common use in undeveloped territory passes to the lessee, his heirs and assigns, a freehold interest in the premises which is taxable as real property, and that a clause therein giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality, constitute rules of property which must be followed by the Federal courts."

The attorneys for appellant cite and rely upon six decisions rendered by the courts of other states, viz.: Fisher v. Crescent Oil Co. (Tex. Civ. App.) 178 S. W. 905, 906; Walker v. Lane (Tex. Civ. App.) 233 S. W. 634, 635; South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; Harris v. Michael, 70 W. Va. 356, 73 S. E. 934; Pierce Oil Corporation v. Schacht, 75 Okl. 101, 181 P. 731; and Battle v. Adams (Tex. Civ. App.) 229 S. W. 930.

We do not find any difficulty in reconciling the decisions cited with our decision in Smith v. Sun Oil Company, as we shall explain by the following analysis of the cases cited:

In Fisher v. Crescent Oil Company, the contract of lease did not contain a clause which, in effect, would make an assignment of the lease on a part of the land a division of the lease into two leases. The only provision in the contract, in that respect, as observed by the court, was that all of the covenants between the parties should extend to their heirs, executors, administrators and assigns. The original lease, by Fisher to Ward and others, covered 320 acres. The lessees conveyed the lease on 240 acres of the land to the Crescent Oil Company, and conveyed the lease on the remaining 80 acres to Russell & Flannigan. Russell & Flannigan completed an oil well on the 80 acres within the time stipulated in the original contract of lease; which well produced oil in paying quantities for about a year, by means of a pump. The Crescent Oil Company drilled a well which proved to be a dry hole, on the 240 acres on which the lease had been assigned to the company; and thereafter the company made no attempt to produce oil from the land. The original lessor, Fisher, sued the Crescent Oil Company to annul the lease on the 240 acres of land, on the ground of abandonment, etc. In deciding that the production of oil by Russell & Flannigan inured to the benefit of the other assignee, Crescent Oil Company, the court said: "It will be noted by the terms of the contract that it is especially provided all conditions therein shall extend to the assigns of the parties thereto." There is no suggestion in the opinion rendered by the Texas court as to how the court would have decided the case if the contract of lease had contained a provision to the effect that an assignment of the lease on only a part of the 320 acres of land would, virtually, divide the lease into two leases.

In Walker v. Lane, the so-called assignment of the lease on a part of the land originally leased to Walker was in fact a sublease, because Walker retained an overriding royalty of one-sixteenth of all oil that might be produced from that part of the land. After Walker had assigned the lease on a part of the land to J. E. Whiteside—or in fact had subleased that part of the land to Whiteside—the Lanes, who were the original lessors of the land to Walker, gave Whiteside two written extensions of the time in which to drill a well; and the court held that the Lanes were thereby estopped from complaining that no well was drilled on the remaining part of the land, because they granted the extensions to Whiteside "with full knowledge of Whiteside's contract with Walker *and the benefits to accrue to the latter by its performance.*" (The italics are ours.) The *benefits* referred to were, not only the overriding royalty to be paid by Whiteside to Walker, but the drilling of a well to a stipulated depth and within a stipulated time, which Whiteside expressly obligated himself to do. In deciding the case, the Texas Court of Civil Appeals referred to the assignment by Walker to Whiteside as a sublease, or subletting, of that part of the land, viz.:

"Whether or not the extensions of time for the beginning of a well, so made by the plaintiff in this suit in conjunction with the other joint owners of the land sublet to Whiteside, but with the intention and understanding with respect to the second extension pleaded by plaintiff and found by the jury, constituted an estoppel of plaintiff to claim, in a court of equity, that the lease on his land which was not sublet to Whiteside was terminated by reason of the failure of Walker and his codefendants to begin a well or pay rentals on that land within the first year of the life of the lease, or, at all events, within the six-months period provided for in the first exten-

sion agreement, is the controlling question to be determined on this appeal; and we have concluded that it should be answered in the affirmative. * * *

"Instead of asserting their right to cancel the lease in its entirety after they discovered that Whiteside would not be able to begin the well before the expiration of the first year of the lease term, they [the original lessors] elected to extend the one already made with Walker. They, as well as Walker, were beneficiaries of the original contract, and they could not in equity accept the benefits accruing to them under it and deny to Walker the benefits likewise due him under the same contract. They could not accept and ratify the contract, in so far as the same was beneficial to them, and reject the rest that was for Walker's benefit."

The important point, however, in Walker v. Lane, was that the so-called assignment by Walker to Whiteside, of the lease on a part of the land which the Lanes had leased to Walker, was in fact a *sublease*, and not merely an assignment of the lease on that part of the land; because the stipulation for an overriding royalty, in a so-called assignment of a lease, whether as to all or only as to a part of the land originally leased, is an infallible test, which characterizes the so-called assignment as a sublease.

South Penn Oil Company v. Snodgrass is authority for the proposition that a contract by which three owners of contiguous tracts of land join in one lease of the whole tract, for the term of ten years and as long thereafter as oil or gas shall be produced from the premises, does not constitute three leases, or require the lessee to drill a well on each of the three contiguous tracts. That proposition is not at all appropriate to this case.

In Harris v. Michael there was no clause in the contract of lease making it dividable by

an assignment of the lease on a part of the land. Michael leased to Harris & Steel a tract of land containing 146 acres, for the production of oil and gas; and Harris & Steel assigned the lease to Frank Burt in so far as it affected 55 acres of the land. Burt drilled a well which produced oil on the 55 acres. Michael afterwards acquired the Burt lease, and thereby extinguished it by confusion; and, assuming that Harris & Steel had abandoned their lease on the remaining 91 acres, Michael leased that part of the land to McBride, and he and his transferees drilled five wells which produced oil, on the 91 acres. Seventeen years after Burt had drilled his well, Harris & Steel sued for an accounting for the oil produced from the 91 acres of land. The court said, in the course of the opinion rendered in the case, that the drilling of the Burt well was a compliance with the lease as to the whole tract; but in fact the court sustained a demurrer to the bill filed by Harris & Steel on the ground that they had abandoned their lease.

The decision in Pierce Oil Corporation v. Schacht, is not at all appropriate to this case. Lee Doyle, as the owner of a tract of land containing 160 acres, leased the land to the Tulsa Fuel & Manufacturing Company for the production of oil and gas. Thereafter Doyle sold 40 acres of the land to I. H. Cox, who sold it to William H. Schacht and his brother; and Doyle afterwards sold the remaining 120 acres to J. W. Adair and another. Thereafter an agreement was entered into between the Tulsa Fuel & Manufacturing Company and J. W. Adair and his co-owner, changing the place of deposit of the rentals and royalties to be paid under the lease; and a similar agreement was made between the Tulsa Fuel & Manufacturing Company and William H. Schacht and his brother. The lease was transferred to L. S. Skelton, who drilled a well on the 120 acres belonging to Adair and his co-owner, and produced gas in paying quantities. Skelton paid the stipulated royalties to Adair and his co-owner, but paid no rentals after the production of gas from the land. He transferred his lease to the Waters-Pierce Oil Company, and the latter transferred it to the Pierce Oil Corporation. William H. Schacht and his brother sued to annul the lease on the 40 acres belonging to them on the theory that the two sales of the land, and the agreement changing the place of payment, had divided the lease into two leases, and that the Pierce Oil Corporation should have drilled a well or paid the stipulated rental on the 40 acres belonging to the Schachts. The court held, of course, that the lessor's selling a part of the leased land to one person and another part to another person, and the subsequent agreement of the purchasers with the lessee, changing the place of payment or deposit of the royalties and rentals, did not have the effect of dividing the lease into two leases.

In Battle v. Adams, the contract of lease contained a clause allowing the contract to be assigned by either party, in whole or in part, and contained the stipulation that the lease would terminate as to both parties if no well should be commenced on the leased premises or within 200 feet thereof before a date specified. Battle, the lessee, contracted with the Hope Oil Company to drill a well within 200 feet from the land leased from Adams, within the time specified; and the Hope Oil Company did drill the well within the time and distance specified. There was no issue in the case as to whether an assignment of the lease on a part of the land would have had the effect of dividing the lease into two leases, under the clause permitting an assignment. If the Pioneer Gas Company, in this case, had contracted with an oil or gas company, or a driller, to drill a well on the leased premises,

instead of disposing of the lease on a part of the land, and if the oil or gas company or driller had drilled a producing well on the leased premises within the time stipulated, the decision rendered in Battle v. Adams, would be appropriate.

■ Our conclusion, according to our interpretation of the clause in the contract of lease allowing an assignment of it in whole or in part, and declaring the effect of an assignment as to only a part of the leased premises, is that the judgment appealed from, declaring that the drilling of a well by the assignees on that part of the land on which the lease was assigned to them did not have the effect of keeping the lease in force on that part of the land on which the Pioneer Gas Company retained its lease, is correct.

The judgment is affirmed.