**JONES et al. v. AMERLAGENE, Inc.**

Nos. 409–412.

District Court, W. D. Louisiana,
Shreveport Division.
April 15, 1941.

Chandler & Chandler, H. M. Holder, and Herold, Cousin & Herold, all of Shreveport, La., for plaintiffs.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, La., for defendant.

DAWKINS, District Judge.

Four separate suits were filed in the above cases in the state court. They were all removed here by the defendant, Amerlagene, Inc., and the plaintiffs have asked that they be remanded to the state court. The issues are substantially the same in all four, and the first numbered will be used for the purpose of disposing of the motions to remand in all four cases.

The petition alleges that the plaintiffs are citizens of the state of Louisiana, but they make two other persons, alleged to have an interest in the matter similar to their own, parties defendant, because of inability to join them as plaintffs and pray for substituting service.

The citizenship of the defendants is alleged as follows: Amerlagene, Inc., of the state of Delaware, Delta Drilling Company (hereafter called Delta) of the state of Texas, while Charlton H. Lyons and Continental American Bank and Trust Company are citizens of Louisiana.

Plaintiffs further allege that they were the lessors and assignees of lessors' rights under a certain mineral lease made originally to the Rodessa Oil and Refining Company (hereafter called Rodessa) on August 31, 1938; that on the same day, Rodessa assigned "an undivided one-half (½) interest" to Charlton H. Lyons; and on October 4, 1939, assigned "an undivided one-fourth (¼th) interest" to Delta; that Rodessa drilled and completed a producing

well on the property about January 14, 193*8* (probably a typographical error, since the lease was not executed until August 31, 1938, and no doubt, January 14, 193*9* was intended), which has continued to produce commercially until this date; that on October 1, 1939, Rodessa "assigned its undivided one-half (½) interest" in said lease remaining after the execution of the assignment to Charlton H. Lyons as aforesaid, to Hurricane Petroleum Corporation (hereafter called Hurricane), a Delaware corporation.

Further, that on January 10, 1939, Hurricane, Lyons and Delta entered into a contract whereby Hurricane "should conduct and manage the properties affected by said lease producing the oil from said well and sell the same on the open market"; that pursuant thereto, Hurricane managed said property until the tenth day of July, 1940, when it was adjudged a voluntary bankrupt; that during its entire operation under said agreement, Hurricane "sold the production to Caddo Crude Oil Purchasing Corporation, a Delaware corporation" (hereafter called Caddo); that Caddo was also adjudged a bankrupt on July 24, 1940; that the entire capital stock of Caddo was owned by Hurricane and the boards of directors of the two companies "were identical" and that M. J. Grogan was "President and Managing Officer of each"; that Hurricane and Caddo "occupied identical suites of offices" and had the same employees; that both were insolvent more than "six months preceding" their adjudication as bankrupts to the full knowledge of their president and boards of directors; that Caddo retained in its possession, the amounts of severance taxes due the state by petitioners, "including the months of April, May and June, 1940", which sums were never paid to the state; that notwithstanding the knowledge by Hurricane and its officers of the insolvency of Caddo and its failure to pay the said taxes, on July 1, 5 and 8, 1940, Hurricane ran 1,704.06 barrels of oil to Caddo, and under the same circumstances during the month of June, 4,324.53 barrels had been run, making a total of 6,028.59 barrels for which Caddo has never paid petitioners.

Further, that the "operating agreement" between Hurricane, Delta and Lyons "created a trustee relationship by virtue of which the said petroleum company was required to produce and sell the oil from the petitioners' said property for the benefit of all of the owners thereof"; that the sales by Hurricane to Caddo were merely "to its other self at a time when the vendors of said oil knew that the purchaser thereof was insolvent"; that consequently said actions constituted a fraudulent "breach of the duties * * * of said petroleum company * * * and * * * a misappropriation to its own benefit of petitioners' property", and of the obligations of the lease, entitling "petitioners to have said lease rescinded and set aside". Article 28 of the petition is quoted in full as follows:

"That as shown by the allegations of Art. 9 of this petition, the Hurricane Petroleum Corporation was named as the agent for Charlton H. Lyons and the Delta Drilling Company for the purpose of managing the property affected by the above described lease and producing and selling the oil recovered from said property; that consequently the said Charlton H. Lyons and the Delta Drilling Company are fully bound by and charged with the conduct, acts and doings of the Hurricane Petroleum Corporation carried out pursuant to said agreement."

Further, that Lyons had assigned his interest to the defendant bank as security for an obligation due by him to it.

Further, that Amerlagene, Inc., filed a claim upon mortgage notes "in the bankruptcy proceedings herein above referred to" and on November 25, 1940 the "* * * Referee adjudicated to the said corporation all of the rights in the property formerly owned by the bankrupt"; that Amerlagene, Inc., thereby "stepped into the shoes of the said bankrupt", and "particularly assumed the obligations of paying the royalties and overriding royalties due under the terms of the said lease to petitioners".

Article 33 of the petition is likewise quoted as follows: "That the defendants, Amerlagene, Inc., Charlton H. Lyons, and the Delta Drilling Company, in violation of the obligations incumbent upon them by virtue of said lease have failed and neglected to pay to your petitioners the royalty on oil produced from said property, as described in Articles 20, 21 and 22 of this petition." (Articles 20, 21, and 22 cover the claims for severance taxes alleged to have been withheld from the state, for which petitioners are liable and the 6,028.59 barrels of oil run in June and July, for which Caddo failed to pay.)

The final Article No. 35 is as follows: "That from and after July 3, 1940, a large quantity of crude oil has been produced from the above described property the exact amount of which is unknown to your petitioners; that petitioners are entitled to said oil or the value thereof and the defendants, Amerlagene, Inc., Charlton H. Lyons and the Delta Drilling Company, should be ordered by this Court to account to your petitioner for said oil."

The prayer is for a "cancellation of the lease * * * and ordering the return of the property affected * * * to the petitioners"; and for an accounting "for all of the oil produced from the above described property from and after July 3, 1940, up to the time of said accounting".

In its petition for removal to this court, Amerlagene, Inc., alleged that the petition "fails to state a claim against" Lyons, Delta and the Bank and that "they were improperly and fraudulently joined" for the sole purpose of preventing removal; that the plaintiffs well knew at the time of bringing said suit, they had no claim against Lyons, Delta and the bank, as "evidenced by consenting that payment of the proceeds of the purchase of crude oil produced from the lease involved to the credit of said parties by the pipeline purchaser thereof * * * and acquiesced in the continued exercise of all of the rights of ownership by them, but said plaintiffs with this knowledge, joined the said" parties as defendants "solely to prevent the removal of this case and not in good faith." The state court signed the order of removal.

The record was filed in this court on January 8, 1941, and on January 13, 1941, defendants filed its answer. On January 21, 1941, plaintiffs filed the motion to remand to the state court, in which they alleged that the suit "seeks a cancellation" of the lease "owned in indivision by the named defendants"; that it is "an indivisible obligation and its cancellation can not be ordered and decreed as to only one of the lessees". The motion denied that the Louisiana citizens were joined as defendants through fraud to prevent removal. There was no denial of the allegations of the petition for removal that plaintiffs have recognized and acquiesced in the continued payment of royalties to Lyons, Delta and the bank.

Ordinarily, in any action to annul a contract, all of the parties thereto and their assigns are necessary and indispensable parties, especially if their interests are to be affected. Counsel for defendant have cited the cases of Swope v. Holmes, 169 La. 17, 124 So. 131, and Roberson v. Pioneer Gas Company, 173 La. 313, 137 So. 46, 82 A.L.R. 1264, to the point that mineral leases under the Louisiana law are divisible, but in each of those instances, the interest involved was distinct and held in its entirety apart from other portions of the property covered by the lease, whereas, here, all of the defendants hold in indivision. I think, since plaintiffs were required to allege all necessary facts and the petition does not annex the lease, but alleges more than one assignment, it may be assumed that the lessee could have transferred his entire rights thereunder to any other individuals as to any separate part of the lands in question. However, that was not done according to the petition as to these defendants. In each instance, they acquired an undivided part of the whole.

At the same time, the petition in this case does not alleged any breach or bad faith on the part of anyone except Amerlagene, Inc., as a basis for cancellation, except to the extent that it is based upon the legal conclusion of agency flowing from the agreement by which it was to operate the lease for the benefit of all concerned, including the lessors. That agreement is not, nor are any of the other contracts alleged upon, including the lease, attached to the petition, although they are said to be made part "by reference" to books and pages of the conveyance records of the Parish. In the petition to remove as previously stated, Amerlagene alleges that, as an evidence of the bad faith and fraudulent making of Lyons, Delta and the bank parties defendant, plaintiffs have, notwithstanding the alleged breach by Hurricane and Caddo, consented and acquiesced "in the continued exercise of all rights of ownership by" these Louisiana defendants. The rule is that if the removal petition alleges the fraudulent making of parties defendant to defeat the transfer, the burden is upon the one so alleging to prove it, if denied. However, the petition to remand does not mention or deny this allegation as to the acquiescence and consent to continued enjoyment of benefits by Delta, Lyons and the bank under the lease, and the effect is to admit it. Even as to Hurricane,

if plaintiffs had sued upon the grounds herein alleged, and it should appear on the trial that, they, notwithstanding, had acquiesced and consented to the continued exercise of all its rights under the lease, the court would be warranted in rejecting the demand, or at least in finding that the breach had been waived. The matter therefore comes down to the question of whether or not there is any real controversy between the plaintiffs and the Louisiana defendants, or whether it is purely one between the former and the Amerlagene. A court of equity has power to render such relief as is justified under all the circumstances.

My view is that the motion to remand should be denied at this time, but reserving the question of whether the case should be remanded until the issues are fully formed by the pleadings and it can be clearly ascertained whether plaintiffs are seeking or are entitled to seek any relief against Lyons, Delta and the Bank.