Natt HOLMAN, Plaintiff and Appellant,

v.

STATE of North Dakota,
Defendant and Appellee,

Henry J. Bren and Mary S. Bren, George L. Bren and Anna Bren, Amoco Production Company, Sunbehm Gas, Inc., and Great Plains Petroleum, Inc., Defendants.

Civ. No. 880296.

Supreme Court of North Dakota.

March 28, 1989.

Secrest Law Firm, Hettinger, for plaintiff and appellant; argued by T.L. Secrest.

Charles M. Carvell, Asst. Atty. Gen., State Land Dept., Bismarck, for defendant and appellee.

GIERKE, Justice.

This is an appeal by the plaintiff, Natt Holman (Holman), from a district court judgment dated July 21, 1988, which granted summary judgment in this quiet title action to the defendant, State of North Dakota (State). We affirm.

This case involves the mineral or leasehold interests in the premises described as the SW¼ and the NW¼ of the SE¼ of Section 2, Township 141 North, Range 96 West, Dunn County, North Dakota (hereafter the subject property). The State owns 50% of the minerals; Henry, Mary, George and Anna Bren (hereafter the Brens) own 40% of the minerals; and Andrew Heiser owns 10% of the minerals in the subject property.

On February 18, 1972, an oil and gas lease was entered into between the Brens and Holman covering the subject property. On May 23, 1972, an oil and gas lease was entered into between the State and Holman covering the subject property.

On November 30, 1976, Holman assigned both of his oil and gas leases covering the subject property to Amoco Production Company (Amoco), reserving a 5% overriding royalty interest. Subsequently, Amoco assigned the oil and gas leases to Sunbehm Gas, Inc. (Sunbehm). Thereafter, Sunbehm assigned the oil and gas leases to Great Plains Petroleum, Inc. (GPP). Then, on October 10, 1985, Holman assigned to GPP his 5% overriding royalty interest in the SW¼ of Section 2, Township 141 North, Range 96 West, Dunn County, North Dakota.[1]

While the record discloses that there is not a producing well on the NW¼ of the SE¼ of Section 2, GPP operated and produced from the Heiser No. 1 well on the SW¼ of Section 2. Production at the Heiser No. 1 well ceased in April of 1986 after GPP filed for Chapter 11 Bankruptcy relief in United States Bankruptcy Court.

On April 4, 1988, the United States Bankruptcy Court issued an order lifting the automatic stay as to the subject property. Subsequent to the lifting of the automatic stay in bankruptcy, Holman commenced on April 29, 1988, this quiet title action to determine the respective mineral interests of the parties in the subject property. Named as defendants in the quiet title action are the mineral owners, the State and the Brens; the present lessee and working interest owner, GPP; and companies that at one time held the lease and working interest, Amoco and Sunbehm.

Holman states in his complaint that he has a mineral interest in the subject property. The State in its answer to the complaint denied that Holman has a mineral interest in the subject property and counterclaimed against Holman alleging that Holman assigned or otherwise conveyed all his interest to Amoco and therefore has no

1. We note that in the assignment to GPP dated October 10, 1985, Holman did not assign his overriding royalty interest in the NW¼ of the SE¼ of Section 2, Township 141 North, Range 96 West, Dunn County, North Dakota.

mineral or leasehold interest in the subject property.[2]

On June 28, 1988, the State filed a motion for summary judgment against Holman on the ground that there is no genuine issue of material fact and the State is entitled to judgment as a matter of law.[3] After Holman failed to timely respond to the State's motion for summary judgment, the trial court ordered on July 14, 1988, that summary judgment be granted in favor of the State and against Holman. Subsequent to the trial court's signing of the order for summary judgment, Holman contacted the court and requested an opportunity to respond to the State's motion for summary judgment. The court informed Holman that it would allow him the opportunity to respond but that the court would consider his response as a motion to reconsider. Holman's motion for reconsideration was denied[4] and judgment was entered on July 21, 1988. Holman filed this appeal on September 19, 1988.

Holman contends on appeal that the trial court incorrectly concluded, as a matter of law, that Holman has no interest in the State's oil and gas lease covering the SW¼ and the NW¼ of the SE¼ in Section 2, Township 141 North, Range 96 West, Dunn County, and therefore the trial court erred in granting the State's motion for summary judgment against Holman.

In ruling on the motion for summary judgment, the trial court determined there was no genuine issue as to any material fact and that the State was entitled to judgment as a matter of law. In so doing, the trial court noted from the undisputed evidence that:

"1) The State owns 50% of the minerals in the SW¼ and the NW¼SE¼ of Section 2, Township 141 North, Range 96 West, Dunn County.

"You present a most interesting issue.... You claim that the Assignment of Oil and Gas Lease from Natt Holman to Amoco Production Company on November 30, 1976 was actually a sublease rather than an assignment. If it was a sublease, of course, it would follow that Holman retained certain leasehold interests in the property which did not necessarily terminate when production by the eventual operator Great Plains Petroleum, Inc., ceased....

"I have reviewed this entire matter again. While I admit considerable fascination with your theory, I simply cannot conclude that the Assignment in question was actually a sublease. The granting language of the Assignment clearly and unambiguously states that Holman does 'bargain, sell, transfer, assign and convey ... all of his right, title, and interest ...' subject only to his reservation of a 5% overriding royalty. That language is so unequivocal, it could not be construed by reasonable minds to be a sublease rather than an assignment. The reservation of an overriding royalty does nothing to change that conclusion because, as you know, in North Dakota oil and gas conveyances are a mixture of real property law and contract law and the reservation of an overriding royalty is to be deemed a real property interest carved out of the real property mineral estate.

"In other words, I conclude that as a matter of law the document in question was an assignment and not a sublease."

---

2. The State, in its answer to the complaint, cross claimed against Amoco and Sunbehm alleging that Amoco assigned or otherwise conveyed its interest to Sunbehm who assigned or otherwise conveyed its interest to GPP and therefore neither Amoco nor Sunbehm have mineral or leasehold interests in the subject property.

On June 28, 1988, the State filed a motion for judgment on the pleadings against Amoco and Sunbehm on the ground of failure to file any responsive pleading. GPP and the Brens joined in the State's motion for judgment on the pleadings against Amoco and Sunbehm. The trial court found that neither Amoco or Sunbehm have filed a responsive pleading to the State's cross claim against them and granted the State's motion for judgment on the pleadings. Judgment was entered on July 21, 1988.

Also, in the responsive pleadings both the State and GPP cross claimed against one another. Subsequently, GPP and the State by stipulation settled their differences, agreed to withdraw their cross claims against one another and asked the court to formally dismiss these cross claims. The trial court formally dismissed the cross claim of the State against GPP and the cross claim of GPP against the State on September 21, 1988.

3. On June 30, 1988, GPP joined in the motion for summary judgment filed by the State against Holman. On July 11, 1988, the Brens joined in the State's motion for summary judgment against Holman.

4. In denying Holman's motion for reconsideration, the trial court stated as follows:

"2) Natt Holman has no interest in the State lease originally given Natt Holman on May 23, 1972, Natt Holman having assigned all his interest in the lease to Amoco Production Company on November 30, 1976.

"3) Natt Holman has no overriding royalty interest in that part of the State lease which covers the SW¼ of Section 2, Township 141 North, Range 96 West, Dunn County, having assigned all his overriding royalty interest to Great Plains Petroleum, Inc., on October 10, 1985.

"4) Natt Holman owns no minerals in the SW¼ and the NW¼SE¼ of Section 2, Township 141 North, Range 96 West, Dunn County."

Initially, we note that Holman's argument is based on the difference between a sublease and an assignment. Thus, before addressing Holman's argument we believe it is necessary to briefly explain the general difference between a sublease and an assignment and to know the legal consequences which may ensue from each.

██ The distinction between a sublease and an assignment is explained in 5 E. Kuntz, *A Treatise on the Law of Oil and Gas* § 64.2 at 232 (1978):

"Traditionally, if the tenant transfers his entire interest in all or a subdivided part of the leased premises, the effect is to substitute the transferee for the transferor, and such transfer is regarded as an assignment. On the other hand, if the tenant transfers less than his entire interest, the transferee is not substituted for the transferor but holds as a tenant of the transferor, and such transfer is regarded as a sublease. Further, there is privity of contract between the lessor and the original lessee which provides the basis for the continuing liability of the original lessee for performance of covenants contained in the lease after he has assigned the lease. There is also privity of estate in that an interest in the land is conveyed and in that there remains a continuing relation between the lessor and lessee regarding the interest granted. The latter type of privity of estate exists between the lessor and the assignee after an assignment and provides the basis for liability of the assignee for performance of the covenants contained in the lease. In the instance of a sublease, the sublessor remains in privity of estate with the lessor and continues to be liable for the performance of all duties imposed by the lease. The sublessee has no liability to the lessor which stems from the covenants contained in, or other obligations incident to, the lease. This is so because there is no privity of any kind between the sublessee and lessor to form the basis for such liability. There is no privity of contract between the lessor and the sublessee, because they did not enter into any contractual arrangement with each other; and there is no privity of estate between them, because the sublessee holds under his sublessor rather than directly under the lessor." [Footnotes omitted.]

Thus, the basic distinction between a sublease and an assignment is that a sublease transfers less than the entire interest thereby retaining a reversionary interest while an assignment conveys the entire interest leaving no reversion.

Holman argues that the transfer of the oil and gas lease to Amoco on November 30, 1976, was a sublease and not an assignment because he reserved from the transfer a 5% overriding royalty interest. Holman thus claims that he would be a sublessor and GPP would be his sublessee. Accordingly, Holman contends that the oil and gas lease would not have been lost or terminated upon GPP's breach of its duty due to nonproduction but rather the lease would have reverted to the sublessor, Holman. However, Holman concedes that if this Court determines that the transfer to Amoco was an assignment rather than a sublease then his argument fails and the trial court's granting of summary judgment was appropriate.

This Court has stated that documents conveying oil and gas interests are subject to the same general rules that govern interpretation of contractual agreements. *Miller v. Schwartz*, 354 N.W.2d 685, 688 (N.D.

1984); *Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778, 780 (N.D.1984); *MacMaster v. Onstad*, 86 N.W.2d 36, 40 (N.D.1957).

The basic rule in interpreting a contract is set forth in Section 9–07–03 of the North Dakota Century Code which provides that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting...." In a contract that is reduced to writing, the intention of the parties must be ascertained from the writing alone if possible. Section 9–07–04, N.D.C.C. Also, if it is difficult to ascertain the parties' intention from the writing alone, the court may look at the subsequent conduct of the parties to help determine the intention of the parties and the construction the parties put upon the agreement. *See Stracka v. Peterson*, 377 N.W.2d 580, 583 (N.D.1985); *Beck v. Lind*, 235 N.W.2d 239, 248 (N.D.1975).

In the instant case, the 1976 transfer of the lease from Holman to Amoco was entitled "Assignment of Oil and Gas Lease". The language used in the granting clause of the document transferring the lease from Holman to Amoco was that Holman "does hereby, bargain, sell, transfer, assign and convey ... all of his right, title, and interest" in the lease to Amoco subject to a 5% overriding royalty. Subsequent to the transfer of the lease to Amoco, Holman signed and recorded a document entitled "Correction of Assignment" in which he repeatedly refers to the transfer to Amoco as an assignment and also refers to himself as the assignor. Also, in the complaint Holman refers to the transfer to Amoco as an assignment. Furthermore, Amoco indicated that it considered the transaction with Holman to be an assignment rather than a sublease.[5]

It is Holman's contention that the reservation of an overriding royalty interest directs that the transfer be classified as a sublease rather than as an assignment. Holman cites and relies on four decisions

rendered by the courts of other states to support his argument that the reservation of an overriding royalty makes the transfer a sublease and not an assignment. *See Roberson v. Pioneer Gas Co.*, 173 La. 313, 137 So. 46 (1931); *Saling v. Flesch*, 85 Mont. 106, 277 P. 612 (1929); *Sunburst Oil & Refining Co. v. Callender*, 84 Mont. 178, 274 P. 834 (1929); *Caudle v. Brannon*, 176 Okla. 394, 56 P.2d 131 (1936).

In *Roberson v. Pioneer Gas Co.*, 137 So. at 48, the Supreme Court of Louisiana stated:

"The reason why an obligation to pay an overriding royalty, ... in a transfer of a lease, ... even though the transaction be called an assignment or a sale of the lease, characterizes the transaction as a *sublease*, and not merely an assignment, is that, in oil and gas leases, under the settled jurisprudence of this state, the payment of a royalty is the payment of rent, and is not the payment of a price for the oil or gas rights, as if they were sold." [Emphasis in original.]

Initially, we note that in Louisiana an oil and gas lease is treated in many respects as an ordinary lease of land. 2 H. Williams & C. Meyers, *Oil and Gas Law* § 412.5 at 326.2 (1988); *see Tyson v. Surf Oil Co.*, 195 La. 248, 196 So. 336 (1940). Additionally, it has been stated that there is no compelling reason to identify the transfer as either a sublease or an assignment by standards applicable to landlord and tenant relations because an oil and gas lease is not considered to create a landlord and tenant relation except in Louisiana. 5 E. Kuntz, *A Treatise On the Law of Oil and Gas* § 64.2 at 233 (1978). Also, Professor Maurice H. Merrill believes that the sublease-assignment distinction drawn from the law of landlord and tenant is:

"utterly inappropriate to the law of oil and gas. A survey of lease and assignment forms reveals no word relative to subleasing as distinguished from assignment. The oil business simply has no

**5.** In 1977, Amoco in a document entitled "Stipulation and Ratification" refers to the 1976 transaction with Holman as an assignment, referring to itself as the assignee and referring to Holman as the assignor. Additionally, Amoco would not have sought the State's approval of the stipulation and ratification had it not thought the transaction was an assignment.

conception of the distinction. To read the cases is to be convinced that it receives an *ex post facto* use, utterly dissociated from any intent of the parties. The results which follow from it, particularly with regard to the transferee's non-liability to the lessor, seem impolitic, contrary to the general understanding of those engaged in the business, and at variance with the practice of the industry. Since the oil and gas lease is not really a lease anywhere, there is no compulsion to make the distinction.... I suggest that a court whose decisions have not already recognized this distinction should weigh the consequences carefully before adopting it." [Emphasis in original.]

Merrill, *The Partial Assignee—Done in Oil*, 20 Texas L.Rev. 298, 322 (1942) *quoted in* 2 H. Williams & C. Meyers, *Oil and Gas Law* § 414 at 335 (1986). Furthermore, in 2 H. Williams & C. Meyers, *Oil and Gas Law* § 414 at 338, it was stated that "[a]lthough special reasons arising from the civil law basis of its jurisprudence may exist in Louisiana for the continued employment of the distinction between an assignment and sublease, we see no valid reason for other jurisdictions to follow the Louisiana example."

██ We recognize that the assignment-sublease distinction is of considerable importance in landlord and tenant law. *See* Powell, *Real Property* ¶ 245 (1950). However, "[i]n oil and gas cases, [most of the producing] states have ignored the [assignment-sublease] distinction even though it would have been decisive in an ordinary landlord and tenant case." 2 H. Williams & C. Meyers, *Oil and Gas Law* § 412 at 318.2 (1986). Unless a different intention is clearly indicated, oil and gas leases are not and should not be governed by the law or policy applicable to ordinary landlord and tenant leases. *See*, Brown, *Assignments of Interests in Oil and Gas Leases, Farm-out Agreements, Bottom Hole Letters, Reservations of Overrides and Oil Payments*, Sw. Legal Found., Fifth Ann. Inst. on Oil & Gas L. & Tax'n 25 at 38 (1954) (hereinafter Brown, *Oil and Gas Leases*); 5 E. Kuntz, *A Treatise on the Law of Oil and Gas* § 64.2 at 232–233 (1978). Accordingly, we believe it is improper to rely upon Louisiana decisions to decide the effect, if any, that a reservation of an overriding royalty has on a transfer of a lease because oil and gas leases in Louisiana have a unique status.

In *Saling v. Flesch*, 85 Mont. 106, 277 P. 612 (1929), and in *Sunburst Oil & Refining Co. v. Callender*, 84 Mont. 178, 274 P. 834 (1929), the Supreme Court of Montana relied on decisions involving surface leases, not oil and gas leases, to determine that a transfer was a sublease rather than an assignment. Unless a different intention is clearly indicated, oil and gas leases are not and should not be governed by the law and policy applicable to surface leases. *See* 3 W. Summers, *The Law of Oil and Gas* § 553 at 599–601 (1958). Accordingly, we believe that both these cases are inapplicable because they rely upon surface lease principles.

In *Caudle v. Brannon*, 176 Okla. 394, 56 P.2d 131 (1936), which involved the construction of a coal lease, the Supreme Court of Oklahoma adhered to the assignment-sublease distinction announced in the Louisiana case of *Roberson v. Pioneer Gas Co.*, *supra*, and the Montana case of *Saling v. Flesch*, *supra*, as applied to oil and gas leases, to determine that the transfer was a sublease and not an assignment. As previously stated, we do not believe that decisions based on landlord and tenant principles or surface lease principles are applicable. Furthermore, the facts in the instant case are distinctly different from those in *Caudle v. Brannon*. In *Caudle v. Brannon*, *supra*, the sublessor retained an overriding royalty and title to certain property on the leasehold. In the instant case, Holman transferred all of his leasehold interest and all of his overriding royalty interest and therefore holds no interest in the SW¼ of Section 2.

Although it has been held that the reservation of an overriding royalty in the transfer of an oil and gas lease may cause the transfer to be classified as a sublease and not an assignment, the authorities do not all agree on this point. *See* Brown, *Oil*

*and Gas Leases,* Sw. Legal Found., Fifth Ann. Inst. on Oil & Gas L. & Tax'n 25 at 27 (1954); *see also* 2 H. Williams & C. Meyers, *Oil and Gas Law* § 412 at 318.2 (1986).

■ In Brown, *Oil and Gas Leases,* Sw. Legal Found., Fifth Ann. Inst. on Oil & Gas L. & Tax'n 25 at 37, Mr. Brown cites several cases in support of his statement to the effect that there are many cases in which transfers of oil and gas leases are treated as assignments without there being an issue of sublease, even though overriding royalty interests are reserved within the transfers. *See also* 3 W. Summers, *The Law of Oil and Gas* § 553 at 602 n. 36.12 (1958) (noting that a great many more cases may be cited where transfers with overriding royalty interests are treated as assignments). Furthermore, in the ordinary assignment case, it is doubtful if the assignor realizes that by reserving an overriding royalty interest in the transfer of the oil and gas lease the transaction could be classified as a sublease whereby he would be assuming all of the liability for breach of the lease covenants by his assignee.[6] *See* Brown, *Oil and Gas Leases,* Sw. Legal Found., Fifth Ann. Inst. on Oil & Gas L. & Tax'n 25 at 37.

Professor Summers stated in 3 W. Summers, *The Law of Oil and Gas* § 553 at 598–599, that "[t]he weight of authority supports the view that these provisions [reserving an overriding royalty interest] do not have the effect of retaining an interest in the lessee and that the transfer is not a sublease." Also, in 2 H. Williams & C. Meyers, *Oil and Gas Law* § 414 at 336, it was suggested that there is no reason for a distinction based upon whether an overriding royalty interest was reserved but instead the real question is the intention of the parties.

■ After examining the cases cited and relied on by Holman, we find that they are distinguishable. Furthermore, we do not believe that the mere retention of an overriding royalty without anything else should cause the transfer of a lease to be classified as a sublease rather than as an assignment. Accordingly, after a thorough review of the transaction in the instant case, we believe that Holman and Amoco intended at the time of the transfer of the lease to create an assignment and not a sublease. Therefore, we conclude that it was not error for the trial court to determine as a matter of law that the November 30, 1976 transfer of the lease from Holman to Amoco was an assignment.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

VANDE WALLE, Justice, concurring.

I concur in the majority opinion. I write separately to observe that in addition to holding, as the majority notes, that documents conveying oil and gas interests are subject to the same rules that govern interpretation of contractual agreements generally, we have also held that oil and natural gas are generally classified as minerals [*State v. Amerada Petroleum Corp.,* 49 N.W.2d 14, 78 N.D. 247 (1951)] and that a mineral interest is generally classified as an interest in real property [*Yttredahl v. Federal Farm Mortgage Corporation,* 104 N.W.2d 705 (N.D.1960)]. Although the majority opinion does not reiterate those particular holdings of our law, I do not understand the majority opinion to be a refutation of those principles. Rather, notwithstanding that there is a substantial difference between a sublease and an assignment in the law of real property which could be applicable to oil and gas interests, I understand the majority to hold that in this particular area of oil and gas law a conveyance, such as the one in the instant case,

---

6. In a sublease, there is *no privity of estate* between the sublessee and the lessor or his assignee and any suit by the lessor for breach of the covenants of the lease may only be brought against the lessee. This is true even though the lessee is usually out of possession of the premises, unable to perform the covenants of the lease himself and yet solely liable for their breach while the sublessee escapes liability to the lessor. *See* Brown, *Oil and Gas Leases,* Sw. Legal Found., Fifth Ann. Inst. on Oil & Gas L. & Tax'n 25 at 36 (1954).

will be construed as an assignment unless a sublease is clearly intended by the parties. This conclusion is a recognition of the obvious, *i.e.*, although we generally consider oil and gas to be interests in real property, they have qualities and characteristics which make blind adherence to real property principles inappropriate in certain circumstances.