67 So.2d 179

J. F. AUDERER LABORATORIES, Inc. v. DEAS et al.

No. 40600.

June 1, 1953.

Rehearing Denied July 3, 1953.

Fishman, Reuter, Rosenson & D'Aquin, New Orleans, for plaintiff-appellant.

· Gordon B. Hyde, New Orleans, for defendants-appellees.

McCALEB, Justice.

J. F. Auderer Laboratories Inc. is appealing from a judgment dismissing, on an exception of no right or cause of action, its suit to compel defendants, Mrs. Myrtle Elizabeth Deas and Harry L. Deas, Jr., to specifically perform their agreement to transfer certain real estate situated in the city of New Orleans for the sum of $35,000 cash.

The well-pleaded allegations of the petition, considered in connection with the documents annexed thereto, reveal the following facts:

On August 1st 1947, defendants, the owners of the property in contest which is located at the corner of Tulane Avenue and S. Liberty Street, leased it in writing for commercial purposes to A. S. Aloe Company for a term, commencing August 1st 1947 and ending September 30th 1950, at a rental of $325 per month. As additional consideration for the payments to be made under the lease, defendants granted to Aloe, its successors or assigns, the privilege or option of either (1) extending the term of the lease on the same conditions for a five year period, commencing October 1st 1950, or (2) to purchase the premises at the expiration of the unextended term of the lease

(September 30th 1950) for $35,000 by notifying defendants of the exercise of said option by registered mail at No. 110 Duplessis Street, New Orleans, on or before April 1st 1950 and, in such event, defendants bound themselves to convey to Aloe a merchantable title to the property within thirty days after September 30th 1950.

On the same day and in the same document, Aloe "assigned" its rights and interests in and to the lease to one Mike Pisciotta for a total monthly rental of $350 ($25 per month over and above that paid by Aloe) specially transferring the right of renewal and the option to purchase the premises granted by defendants. However, it was provided in this contract that Pisciotta must exercise the option to renew the lease or purchase the property, as the case may be, by March 1st 1950 rather than April 1st 1950 (as granted to Aloe) and that, if he failed to exercise it within that time, Aloe would have the right to exercise it.

Simultaneously, and as part of the same document, Pisciotta subleased the premises to plaintiff for a rental of $375 per month ($25 more than Pisciotta was required to pay Aloe). And, in further consideration of the payments to be made under the sublease, Pisciotta granted to plaintiff the privilege or option, which had been assigned to him by Aloe, to either extend the term of the lease or to purchase the property, provided that the option be exercised by plaintiff on or before February 15th 1950 and,

if plaintiff failed to exercise the right within the allotted time, the option would revert to Pisciotta.

Immediately following the execution of the lease together with the assignments or subleases, which were made with the knowledge and consent of defendants, plaintiff took possession of the premises. Thereafter, on November 15th 1949, plaintiff entered into another agreement with Pisciotta wherein, for a consideration of $1000 cash, he sold, transferred and assigned to plaintiff all of his right, title and interest in the lease, especially the $25 over-plus, which he had been receiving from plaintiff each month above the rental that he had to pay Aloe, together with his right to exercise the option to purchase the premises in accordance with the original contract of lease.

On February 20th 1950, plaintiff notified defendants by registered mail of its intention to exercise the option to purchase the property for $35,000 cash and sent advice of its action to Pisciotta and Aloe on February 24th 1950. Not having received a reply to its letter, plaintiff thereafter advised defendants, by registered mail dated September 25th 1950, that, inasmuch as the option had been exercised, it was ready to take title to the property and requested them to convey title within 30 days after September 30th 1950, in accordance with the terms of the option to purchase contained in their contract with Aloe. Upon defendants failure to respond, plaintiff notified them on October 20th 1950 by registered mail that it was fixing October 30th 1950 as the date for passage of the act of sale of the property and informed them that it would be present at that time to take title. It is alleged that, on the appointed day, plaintiff appeared through its authorized officer and expressed its willingness to the notary public to take title to the property for the price agreed on but that the defendants, represented by their attorney, refused to execute the act of sale.

The principal theory of the exception of no right or cause of action is that defendants have no contractual tie with plaintiff for as much as Pisciotta was not an assignee but a sublessee of Aloe and, in like manner, plaintiff was merely a sublessee and not an assignee of Pisciotta. The claim that these transferees are sublessees stems from the circumstance that, in the purported assignment from Aloe to Pisciotta and in the conveyance from the latter to plaintiff, the grantors, Aloe in one case and Pisciotta in the other, retained an interest in the lease, viz.—$25 per month excess in rental payments and a reversionary right to exercise the option in the event of the transferee's failure to do so within a stipulated time.

Article 2725 of the LSA–Civil Code[1] and the established jurisprudence of

---

1. The Article provides, in part, "The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted."

this court recognizes that there is a difference between an assignment and a sublease. It was tersely stated in our recent decision in Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149, 153, " * * * that the distinction between an assignment on the one hand and a sublease on the other is that in an assignment the original lessee transfers all of his rights in the lease; whereas in a sublease he retains some control or interest in it". See also Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131 and Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.

Hence, it is clear that, in the instant case, the purported assignments of the lease from Aloe to Pisciotta and from Pisciotta to plaintiff were, in legal effect, subleases of the premises since, in each instance, the grantor or assignor retained an interest in the lease.[2] But it does not follow from this that defendants' position of lack of privity of contract with plaintiff is well taken. On the contrary, these contracts between Aloe and Pisciotta and Pisciotta and plaintiff are to be regarded as subleases only insofar as the demised premises are concerned. The option, which was transferred at the same time and in the same document, was assigned and not subleased. This is so because the option is a right which, by its very nature, is incapable of being leased or subleased. The grant by defendants of the option to purchase the leased premises was an independent right given the lessee of different import from the letting. Compare Articles 2462 and 2674 of the LSA–Civil Code. It was an appendage of the lease by reason of the fact that the obligations of the lease operated as the consideration supporting it. This grant or privilege was assignable by specific contractual agreement and also by law. Article 2009, LSA–Civil Code. Assignment of the lease and sublease of the premises were also permissible. Article 2725, LSA–Civil Code. Therefore, the legal effect of the contract made simultaneously between Aloe and Pisciotta was that the latter became a subtenant of the premises but he acquired the option by assignment, that right, as we have stated, not being the subject of sublease. And, in like manner, plaintiff acquired it by transfer from Pisciotta. Thus, in virtue of these assignments, plaintiff stood in the shoes of Aloe, the original optionee.

Industrious counsel for defendants, in arguing that there was no contractual relation between plaintiff and defendants, relies heavily on the decision of this court in Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33. That case does not control the result here. In that matter, the subtenants of the property were claiming a

---

2. Compare, however, the assignment from Pisciotta to plaintiff dated November 15th 1949 wherein Pisciotta disposed absolutely of all of his interest in the lease for $1000, leaving no contractual relation between the parties.

right to renew the original contract of lease in conformity with a privilege of extension which had been given to the lessee. However, by special covenant, the lessee was prohibited from transferring or assigning the. lease in whole or in part. The court therefore correctly concluded that defendants, as mere sublessees, had no privity of contract with the owner and had not acquired any right to extend the lease by transfer or assignment since the lessee, defendant's transferor, had no such privilege under the original contract. In the case at bar, the privilege of assignment or transfer of the option and right of renewal was not withheld by the owners—it was specifically conferred.

Counsel further insists that plaintiff's claim should be denied for the reason that the option to purchase the property was an integral part of the lease and could not be separated therefrom, as it was supported only by the payment of rents and performance of the obligations of the lease itself and not by an independent consideration. The thought upon which this argument is evidently predicated is that, since there is no privity of contract between plaintiff and defendants insofar as the sublease of the premises is concerned, the transfer of the option cannot stand separate and apart from the ownership of the lease as the rights which may be acquired under. the option are dependent upon the fulfillment of the covenants by the original lessee, Aloe.

■■ We see no merit in this proposition because, as we have said, the option, like any other right, was subject to assignment by specific provision of the lease and also under Article 2009 of the LSA–Civil Code. We perceive no sound reason why it could not be transferred separately from the lease or in conjunction with a sublease. The fact that its exercise by plaintiff would not unconditionally bind defendants and was dependent upon the fulfillment of the lease contract by the lessee affords no ground for a denial of the right of transfer. On the contrary, when the option was exercised by plaintiff, a binding executory agreement to sell and purchase resulted which became subject to enforcement by specific performance, provided, of course, that the covenants of the lease respecting rent, etc., were performed by the original lessee. Article 2462 of the LSA–Civil Code; Moresi v. Burleigh, 170 La. 270, 127 So. 624 and Thompson v. Thompson, 211 La. 468, 30 So.2d 321.[3]

---

3. The authorities relied on by counsel for defendant, Murphy v. Hussey, 117 La. 390, 41 So. 692; Succession of Witting, 121 La. 501, 46 So. 606 and Kinberger v. Drouet, 149 La. 986, 90 So. 367, do not substantiate his contention that the option to purchase was inseparable from the lease. Those cases are authority only for the proposition that the taking of a lease is sufficient consideration to support the granting of an option to purchase the property during the continuance of the lease and that, therefore, such an option cannot be withdrawn by the lessor during that time. The other case cited by counsel, Glover v. Abney, 160 La. 175, 106 So. 735, merely holds that an option must be supported by valuable consideration.

■ The next point tendered by counsel is that, since plaintiff did not exercise the option until February 20th, 1950, its right had expired because the assignment which it obtained from Pisciotta on August 1st 1947 provided that plaintiff would be required to exercise the privilege on or before February 15th 1950. There is no substance in this contention for it fails to take into account the contract of November 15th 1949 wherein plaintiff acquired by assignment from Pisciotta all of his right, title and interest in and to the lease and the option to purchase. Pisciotta, under the assignment from Aloe, had the exclusive right to exercise the option on or before March 1st 1950. Accordingly, since plaintiff had acquired Pisciotta's rights, its notification to defendants on February 20th 1950 was in due time.

■ In order to avoid the effect of the assignment by Pisciotta on November 15th 1949, counsel maintains that it is not binding on defendants because it was not recorded. And, taking the position that defendants were third parties to this assignment, counsel refers to copious citations supporting the basic precept stated in Article 2266 of the LSA–Civil Code that unrecorded sales, contracts and judgments affecting immovables are null except between the parties.

The flaw in the proposition is counsel's assumption that defendants are third persons. They are, of course, not parties to the assignment; they were not required to be. But they are the grantors of the option which was exercised; it is the contract resulting therefrom for which enforcement is now sought. Plaintiff, as transferee of that option, stands in the shoes of Aloe and, therefore, there is privity of contract between the parties. The law of registry has no pertinence whatever to the case.

■ Counsel next professes that plaintiff has not offered to perform, by payment or tender of the purchase price within the time required by the contract—that is, it is said that plaintiff has not alleged that it made a tender until October 30th 1950 and that, under the contract, it should have been made on September 30th 1950.

This proposition is not well founded and it are inapposite. The option specifically provided that, in the event of its exercise the cases cited by counsel to substantiate on or before April 1st 1950, the defendants would be obligated to convey title within 30 days after September 30th 1950. The allegations of the petition show that the option was exercised in time. This constituted an acceptance of defendants' continuing offer and transformed it into an executory contract of sale which was to be consummated at the expiration of the unextended term of the lease, September 30th 1950. On September 24th, plaintiff notified

defendants of its willingness to take title to the property. It then became the duty of defendants to convey a merchantable title on or before October 30th 1950.

 Finally, counsel contends that, in any event, defendants have been guilty only of a passive breach of the contract and that it was therefore an indispensable prerequisite to the cause of action that it be shown that they have been placed in default.

The short answer to this point is that the bringing of this suit was a sufficient putting in default under Article 1911 of the LSA– Civil Code. This is a suit for specific performance; it is not an action for damages for the violation of a contract—it has for its object the enforcement of the agreement. In such instances, the bringing of the suit is a putting in mora. Davis v. Spurlock, 3 La.Ann. 208 and Healy v. Southern States Alcohol Mfg. Co., 136 La. 1080, 68 So. 132.

The judgment appealed from is reversed, the exception of no right or cause of action is overruled and the case is remanded to the district court for further proceedings consistent with the views herein expressed. The costs of this appeal are to be paid by defendants.