*652 On Rehearing
McCALEB, Justice.
On May 19, 1936, D. V. Doussan Oil & Planting Company, the owner of a 2000 acre tract of land in Lafourche Parish, granted a mineral lease thereon to A. B. Crowder. This lease was subsequently acquired by plaintiffs, Mirandona and Chauvin, who transferred it to Henry J. Montagnet on July 26, 1938, together with many other mineral leases which they had acquired from Crowder. Montagnet split his holding in the Crowder lease into a number of fractional interests which he transferred to various persons but thereafter these small interests were gathered together in a company, known as Mohawk Corporation. On December 4th 1940, Mohawk “assigned” the Crowder lease to the defendant, Joe W. Brown, and, on the same date, Brown transferred it to Mabro Oil Company, Inc., in which he held a controlling interest.
Thereafter, the lease was developed and some oil was obtained but, by March of 1933, production had dwindled to 72 barrels per month and, from then on, the output from the entire 2000 acre tract never exceeded 100 barrels per month. Meanwhile, the landowner, Doussan Company, had become increasingly dissatisfied with the small returns and, on April 24, 1943, its attorney wrote to all persons interested in the mineral lease directing their attention to the lack of commercial production, the absence of any drilling operations, since March of 1941, and the nonpayment of delay rentals in lieu thereof. Upon the failure of these lessees, their assignees or sublessees to respond, counsel for Doussan advised them again in writing, on May 28, 1943 that the lease had terminated for lack of production in paying quantities and requested that they stipulate this to be the fact and execute a voluntary cancellation of the lease. These notifications were without avail and, finally on December 21, 1943, Doussan filed suit for recognition that the lease had expired by its own terms because of the lessee’s failure to comply with its covenants. Plaintiffs, Mirandona and Chauvin, as well as Brown and other transferees, were made parties defendant to that action in which cancellation was sought of all of the transfers and assignments identified with the lease as well as of the lease itself.
On May 12, 1944, judgment was rendered by the Court, conformable with plaintiff’s prayer, decreeing the cancellation of the lease and all of the assignments and transfers thereof, insofar as such assignments and transfers might bear upon the 2000 acres owned by Doussan, and the Register of Conveyances for the Parish of Lafourche was directed to erase from his records all of the various inscriptions of any rights acquired under or by virtue of the lease or assignments thereof.[1]
*654 On June 26, 1944, less than two months after rendition of the judgment, Doussan Company granted a new mineral lease to Brown covering the same 2000 acres, for which Brown paid a cash bonus of $12,750. He immediately began development, expending approximately $750,000 in drilling six wells and succeeded in obtaining good production.
Five years after Brown had secured this lease, Mirandona, Chauvin and others instituted the present suit against him, praying to be recognized as owners of %ths interest in the original lease and, alternatively, for a Msth undivided interest and an accounting. Following joinder of issue and four days before the date of the hearing, plaintiffs filed a supplemental petition in which they sought recognition as owners of an undivided %ths interest in the lease between Doussan and Brown and, in the alternative, for a Meth interest therein and an accounting. Plaintiffs have since abandoned their initial demands and are now insisting only that they be recognized as owners of an undivided Moth of the production from the Brown lease and for an accounting.
This claim stems from a reservation contained in the instrument, dated July 26, 1938, wherein Mirandona and Chauvin transferred the Crowder lease to Montagnet, along with various other mineral leases which they had acquired from Crowder. As part of the consideration of that contract, Mirandona and Chauvin excepted and reserved to themselves M6th of all of the oil, gas and other minerals on the land described in the lease and made it incumbent upon Montagnet to withdraw this Meth part of the minerals and to pay and deliver the proceeds from their sale unto them. It was further provided that:
“The one-sixteenth (Me) part of eight-eighths (%) of all the oil, gas and other minerals excepted and reserved by assignors herein shall apply and be a part of all future renewals, extensions and new leases made by assignee on the lands covered by the herein described lease or leases for a period of one year from the date of the expiration of said lease or leases.”
It is the contention of plaintiffs that Brown is a successor and assign of Montagnet; that, this being so, he became bound by the provision projecting their Meth overriding royalty to include all renewals, extensions and new leases made within one year from the expiration of the original lease, and that, therefore, as he made the new lease within two months of the cancellation *656 [2] of the original lease, it became his personal obligation to turn over JÍ6th of all production from that lease to them.
On the other hand, defense counsel assert, amid their other points, that Brown was not an assignee of Montagnet but a sublessee of Mohawk Corporation and, hence, is not bound by any of the personal obligations of Montagnet to, Mirandona and Chauvin.
On first hearing, a majority of the court rejected this contention, being of the view that Brown was a successor or assign of Montagnet within the meaning of a clause contained in the agreement between Mirandona, Chauvin and Montagnet, reading “all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns.”
We are now convinced that we were in error in this resolution. To begin with, it seems clear that the conveyance from Mirandona and Chauvin to Montagnet and the subsequent transfer, on December 4, 1940, from Mohawk Corporation to Brown were not assignments, as they are labelled, but subleases. The reason for this is that in each transfer the “assignors”, by reserving an overriding royalty, retained an interest in the lease (Vietb. in the Montagnet sublease and %th in the Brown sublease). See Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 and Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149.
Forasmuch then, as Brown was a sublessee of Mohawk and not an assignee of Montagnet, no privity of contract existed between him and Mirandona and Chauvin and therefore he neither assumed nor did he become liable for the personal covenant of Montagnet in favor of Mirandona and Chauvin. It was only the assignees and successors of Montagnet who stood in his shoes and became affected by his promises. Thus, if it be assumed that the transferees of Montagnet (including Mohawk Corporation, acquired under assignments or by operation of law, they became liable for his engagement with Chauvin and Mirandona. Not so, however, with Brown for he, as a sublessee of Mohawk Corporation, had no privity of contract with Mirandona and Chauvin and was not responsible for Montagnet’s covenant with them.
It is firmly established in our jurisprudence that there is no contractual obligation by and between a lessor and a sub *658 tenant. See Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33, 124 Am.St.Rep. 456 and Smith v. Sun Oil Co., supra, and authorities there cited. Compare J. F. Auderer Laboratories v. Deas, 223 La. 923, 67 So.2d 179. In Smith v. Sun Oil Co. [165 La. 907, 116 So. 381], this court made a comprehensive review of the French commentators and also the rules obtaining in other States under the general law respecting the difference between an assignment and. a sublease. The opinion quotes approvingly from Taylor on Landlord and Tenant, 9th Ed., Section 16, thus:
“ ‘And the importance of this distinction consists in this, that, while an assignee is liable to the original lessor for all the obligations of the lessee by virtue of the privity of estate that subsists between them, no action can be maintained by the lessor against the undertenant, upon any covenant contained in the lease, since there is neither privity of estate nor of contract between himself and the undertenant’ ” (Emphasis ours.)
Applying the foregoing reasoning to the case at bar, it will be at once seen that, apart from all other reasons, Mirandona and Chauvin are without right or claim against Brown under his present lease with Doussan Co. The royalty reserved by them in the Montagnet transfer extended to the production obtained under the Crowder lease and this right was enforceable as against all assignees and sublessees alike so long as that lease was in esse. But the reason why their royalty interest was effective, as to Brown and any other sublessee, as well as all assignees, during the time that the first lease was in force, was not because of any contractual relationship between Brown or any other sub-lessee and Mirandona and Chauvin. It was because the interest they had reserved had been placed of record in the Parish-where the- land was situated. However, when the Crowder lease was declared terminated by the judgment of court and-plaintiffs’ royalty interest also specifically cancelled and erased from the records, the only right remaining in them was their royalty reservation to share in the production from any new lease which Montagnet or his successors and assigns might make with Doussan Co. within one year from the expiration of the Crowder lease. This royalty reservation was obviously a contingent one as it was to become effective only in case of a future event — i. e., the production of minerals from the original leased premises under a new lease taken by Montagnet or any of his assignees within a year from the expiration of the first lease. This suspensive condition did not occur and therefore no royalty interest in plaintiff became extant for the obligation due by Montagnet was a personal one and was enforceable only against him and those standing in his shoes. Brown as a sublessee, was not bound by it.
*660 Counsel for plaintiffs harbor the belief that, because the sublease from Mohawk Corporation to Brown stipulated that it was subject to the reservations contained in the transfer from Mirandona and Chauvin to Montagnet, Brown individually assumed Montagnet’s obligation to them.
The flaw in this position is that Brown did not assume Montagnet’s obligation; he. merely accepted the sublease “subject to” plaintiffs’ reservation. This did not bind him for Montagnet’s personal convenant to plaintiff; it simply rendered the sublease amenable to plaintiffs’ royalty reservation, so long as the original lease was in force. Gauche v. Gerdes, 10 Orleans App. 56. Indeed, inasmuch as plaintiffs’ royalty reservation was of registry, the relied on provision in the transfer from Mohawk to Brown added nothing to plaintiffs’ rights.
The judgment appealed from is affirmed. Appellants are entitled under our rules to apply for a rehearing.
FOURNET, C. J., concurs.
HAWTHORNE, J., dissents.

. The judgment of court excepted from its effect 25 acres surrounding the Doussan No. 3 well, which was in conformity with the provisions of the lease. Subsequent *654 ly, on September 20th 1948, Mirandona and Chauvin executed a release of their remaining interest in the lease in favor of Doussan. For purposes of this decision, we do not regard either the exception in the judgment of cancellation or the subsequent release to be an issue of importance.

. The contractual provision is that the restricted period is for one year from the “expiration” of the first lease. Brown maintains on this rehearing that the original lease had expired by its own terms more than a year before be made a lease with Doussan Co. Because of the conclusion we have reached, it is not essential for us to consider this issue.