BOLIN, Judge.
Thriftee Oil Company, Inc. and Wolf Oil Company, Inc. instituted this suit against W. B. Partin seeking a declaration of plaintiffs’ rights under a memorandum agreement whereby Thriftee allegedly assigned to Wolf its right in a surface lease executed by Partin covering property on which was located a self-service type filling station. Plaintiffs also sought a permanent injunction against Partin to prevent interference with their possession. Partin reconvened seeking dissolution of the lease and an accounting from Wolf for profits allegedly earned from the operation of the station from August 11, 1967 until October 13, 1967. Prior to trial Wolf and Thriftee entered into an agreement which rendered the issue of a right to declaratory judgment moot and this portion of the suit was dismissed. From judgment declaring the lease from Partin to Buster A. Brown, the original lessee, dissolved and ordering plaintiffs to vacate the premises and to render an accounting to Partin, plaintiffs have appealed.
The primary issue is the proper interpretation of the following provisions of the lease from Partin to Brown dated June 30, 1966:
“It is understood and agreed between the parties that the Lessee shall have the right to assign this lease to THRIFTEE OIL COMPANY, INC., (a Louisiana corporation in the process of being formed), but otherwise the lessee does not have the right or authority to sublease or sublet the above described premises in part or in whole without the written consent of the lessor.”
The lease from Partin to Brown had a 10-year term, stipulated fixed monthly rentals and provided the premises were to be used exclusively for operating a self-service type automobile service station. Between June 30, 1966 and June 1, 1967 Brown constructed upon the property the service station and assigned all of his right, title and interest in this lease to Thriftee Oil Company, Inc., a Louisiana corporation.
On August 11, 1967 Thriftee and Wolf entered into a memorandum agreement which covered the operation of the service station upon the property owned by Partin and five other stations located in other cities within the State of Louisiana. Provisions of the memorandum agreement which *559 bear upon leases are paragraphs 4 and 8, which provide:
“4. Wolf shall assume all liability for and pay all rentals, lease payments and taxes, however, any rentals and lease payments and/or taxes will be prorated as of the date of August 15, 1967. Wolf shall perform all terms and conditions in said lease agreements as may be necessary to maintain same in full force and effect.
“8. Thriftee agrees that Wolf shall enjoy and receive any and all rights and interests it may or might have under any leasing instrument or agreement. Wolf accepts this agreement with full knowledge that certain leases have restrictions on assignment and agrees to accept assignments of the leases in the event the lessors fail to consent.”
Pursuant to this agreement Wolf began to operate the service station located on Par-tin’s property and continued to operate it through the trial on October 13, 1967. By letter dated September 16, 1967 Partin gave notice to Brown, Thriftee and Wolf to vacate the premises within five days as he considered his lease to Brown of June 30, 1966 to be null and void, as same had been assigned without his consent. Plaintiffs failed to vacate and on September 21, 1967 the instant suit was initiated by Thriftee and Wolf against Partin.
Basic to a resolution of the issue is the meaning of Article 2725 of the Louisiana Civil Code:
“The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
“The interdiction may be for the whole, or for a part; and this clause is always construed strictly.”
The jurisprudence under this article has developed two rules of interpretation which must be dealt with in the instant case. The first of these is that the words ‘assignment’ and ‘sublease’ have separate and distinct connotations. As stated in J. F. Au-derer Laboratories v. Deas, 223 La. 923, 67 So.2d 179, 45 A.L.R.2d 1026 (1953):
“Article 2725 of the LSA-Civil Code and the established jurisprudence of this court recognizes that there is a difference between an assignment and a sublease. It was tersely stated in our recent decision in Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149, 153, “* * * that the distinction between an assignment on the one hand and a sublease on the other is that in an assignment the original lessee transfers all of his rights in the lease; whereas in a sublease he retains some control or interest in it”. See also Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330, Swope v. Holmes, 169 La. 17, 124 So. 131 and Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.”
With these cases in mind it is clear to us the memorandum agreement is not a sublease nor a subletting, both of which are specifically interdicted in the lease itself. We find the memorandum agreement was an assignment from Thriftee to Wolf which poses the difficult question of whether such an assignment is prohibited in the lease.
The second rule to which we referred previously relates to the “strict construction” provision in the second paragraph of Article 2725. This has been interpreted to mean a strict construction against the lessee which is contrary to the usual rule that the provisions of a contract must be strictly construed against him who prepares it. In Owens v. Oglesby, (La.App.Orl.1960) 123 So.2d 521, the court relied on previous Supreme Court cases interpreting the concluding clause of Article 2725, stating:
“The Supreme Court in interpreting the concluding clause of the codal article has held that the prohibition to sublease is always construed strictly against the lessee. Cordeviolle v. Redon, 4 La.Ann. 40; Henderson v. A. Meyers & Bro., 45 La. Ann. 791, 13 So. 191. Moreover the cove *560 nant in the lease against subletting is for the benefit of the landlord because it is regarded as for his interest to determine who shall be a tenant of his property. Montecon v. Faures, 3 La.Ann. 43; Marcuse v. Shapiro, 1 La.App. 135; Bailey v. Allen E. Walker & Co., 290 F. 282, 285, 53 App.D.C. 307.
We come now to the very narrow question: Does the specific inclusion of the right to assign to Thriftee Oil Company, Inc., read in context with the remainder of the clause limiting the right to sublease without the written consent of the lessor, amount to a prohibition or interdiction of the right to assign to anyone other than Thriftee? We have been cited to no Louisiana cases which deal directly with the point involved.
Article 1717 of the Code Napoleon, from which our C.C.Art. 2725 is derived verbatim, is discussed in Planiol, Vol. 2, Part 2, Sec. 1752:
“In principle the lessee has the right to sublet or to assign his lease (Art. 1717) but this liberty can be withheld from him by a clause to the contrary.
“What is the effect of such a contract? There is no doubt as to its extent if it expressly states that the lessee can neither assign nor sub-lease without the consent of the lessor. But ordinarily the parties only employ one of the two expressions (and this inveterate habit is an additional proof of the real unity of the two contracts). It may be asked whether one of the two is forbidden, whether the other is permitted. In my view, a distinction should be made. The prohibition against sub-leasing should for a stronger reason carry with it the prohibition to assign the lease, which is a more serious contract; but the prohibition to assign the lease leaves to the lessee the faculty of subleasing, which does not in fact change the person of the principal lessee. But the jurisprudence has adopted another view. According to it the prohibition should always be interpreted restrictively; as a consequence, the prohibition against subleasing does not ever carry with it prohibition of assigning the lease, and vice-versa. * * * ”
It is asserted by appellee that the clause in the lease prohibits and was intended to prohibit any transfer of the lease by sublease, assignment or otherwise, to anyone except Thriftee Oil Company, Inc. To bolster this argument counsel quotes the lat-ín maxim, “expressio unius est exclusio al-terius” and contends that to express permission to assign to one party is to exclude permission to assign to all others-.and that it had not been the intention of the parties to this instrument to prohibit an assignment to all others, there would have been no necessity for the provision expressly permitting the assignment to Thriftee. This maxim is much used in construction of statutes but we consider it inapplicable to interpretation of a lease granted under La.C.C. Art. 2725 which, absent an express prohibition, entitles the lessee to transfer his rights in any manner he sees fit.
Appellee also contends that in construing the meaning of this paragraph of the lease, it is necessary to endeavor to ascertain the common intention of the parties rather than to adhere to the literal sense of the term employed, citing La.C.C. Art. 1950. By this argument counsel necessarily must consider the terms of the clause as ‘doubtful’ or ambiguous. In view of the requirements of La.C.C. Art. 2725 that the interdiction of the right to underlease or cede (assign) must have been expressly interdicted, we can perceive no right conferred upon the court to construe an ambiguous clause as an express interdiction of a right.
The reason for the parties inserting in the lease the right of Brown to assign to Thrif-tee, when permission was unnecessary under the Civil Code article, is not apparent. Any effort to determine this reason would require pure speculation. Perhaps it was *561 done at Brown’s insistence because of reasons peculiar to him; perhaps because the Thriftee corporation was not yet in existence and the parties to the lease desired the name of the corporation to appear in the document, but we cannot indulge in speculation in order to find an “express interdiction”.
While it may have been the intention of the lessor to limit the right of his lessee, Brown, to assign the lease only to Thriftee Oil Company, Inc., no such prohibition is spelled out in the lease and the first'paragraph of Article 2725 confers upon the lessee an unfettered power to sublease or to cede unless this power has been expressly interdicted. Appellant contends, and we think rightly so, that the lessee may assign or may sublease his lease, unless that power is interdicted within the lease itself and that the instant lease only interdicted the right to sublease or sublet. We conclude the permission to assign to Thriftee is not an express interdiction of the right to assign, which Thriftee acquired under the assignment from Brown.
For the reasons assigned the judgment of the lower court is annulled, reversed and set aside and it is now ordered that there be judgment in favor of Thriftee Oil Company, Inc. and Wolf Oil Company, Inc. and against W. B. Partin decreeing that certain surface lease between W. B. Partin, as lessor, and Buster A. Brown, as lessee, dated June 30, 1966, covering property at 3840 North Market Street, Shreveport, Caddo Parish, Louisiana, and the assignment of this same lease to Thriftee Oil Company, Inc., dated June 1, 1967, be in full force and effect.
It is further ordered that W. B. Partin be permanently enjoined from interfering with the peaceable possession of the leased premises under the terms of the lease.
It is further ordered all demands of W, B. Partin, as plaintiff in reconvention, be dismissed and he be cast with all costs of these proceedings.