281 So.2d 156 (1973)
Dulan W. FONTENOT, Plaintiff-Appellant,
v.
Edison MANUEL, Defendant-Appellee.
No. 4220.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1973.
Rehearing Denied August 15, 1973.
*157 Tate & Tate by Donald Tate, Mamou, Andrew J. Vidrine, Church Point, for plaintiff-appellant.
Fusilier, Pucheu & Soileau by A. Gaynor Soileau, Ville Platte, Robert F. DeJean, Jr., Opelousas, for defendant-appellee.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Plaintiff Dulan W. Fontenot appeals the judgment invalidating his option to purchase immovable property from defendant Edison Manuel. The option was held invalid for want of valuable consideration. We reverse, order specific performance and award damages.
The facts of the case are rather complicated, but were well summarized by the trial court as follows:
"This suit, tried during separate years, and submitted after an extended period of time, was instituted by Dulan W. Fontenot against Edison Manuel seeking damages and specific performance, compelling sale of a certain lot and building known as the Lodge, situated in the Parish of St. Landry, Louisiana.
"The facts are these:
"(1) Joseph W. Fontenot, his mother, and his sister, were the owners in indivision of a certain lot located (near) the *158 City of Eunice, Louisiana, upon which stood a commercial establishment known as the Lodge. This lot was the approximate west one-half of a larger tract comprizing one (1) acre, the east one-half belonging to Joseph W. Fontenot, individually.
"(2) On July 1, 1965, Joseph W. Fontenot completed and opened, on his individual property, a nightclub known as the Purple Peacock. He sold, on October 6, 1965, a one-half interest in that property to plaintiff, Dulan W. Fontenot. (Dulan Fontenot is not related to Joseph Fontenot.) Subsequently, on January 2, 1966, Dulan W. Fontenot acquired the remaining interest of Joseph W. Fontenot in that property.
"(3) In addition to his holdings in the Lodge property, Joseph W. Fontenot, with his mother and sister, owned Fontenot Building and Lumber Supply Co. of Mamou, Louisiana.
"(4) During the year 1965, Joseph W. Fontenot and Dulan W. Fontenot, partners in and co-owners of the Purple Peacock, being in need of funds for their establishment, sought and borrowed of Edison Manuel, the sum of $1,500.00. Dulan W. Fontenot had requested the funds of Manuel, however, Manuel indicated to him that he would not make the loan to Dulan but to Joseph W. Fontenot. In due course, Manuel, a lessee of the Fontenots (Joseph, his mother, and his sister) who leased the Lodge, lent the $1,500.00 in the form of pre-paid rentals for 10 months on the Lodge .... Accordingly, repayment of this sum to Fontenot Building and Supply Co. was begun by the owners of the Purple Peacock.
"(5) On February 4, 1966, Joseph W. Fontenot, his mother, and his sister, sold the Lodge property to Edison Manuel. Joseph W. Fontenot, in need of finances at that time, attempted to sell this property to Manuel for $7,500, however, Manuel said he would give no more than $5,000.00. On being informed that it would take at least $6,000.00 to rid the property of an outstanding encumbrance, an agreement was struck whereby Manuel would pay $6,000.00, the understanding being that the sum of $1,050.00 still owed to him in advance rent would be repaid. On being told by Joseph W. Fontenot that he desired to retain an option to repurchase, it was agreed that the consideration of advance rent to be repaid would be recited as the consideration for the option. At this time, Joseph W. Fontenot and Dulan W. Fontenot had repaid Fontenot Building and Supply Co. the sum of $450.00.
"(6) On February 5, 1966, an option was given by Edison Manuel to Joseph W. Fontenot, solely, for the recited consideration of $1,050.00, supposedly evidenced by a note, to repurchase the property within three (3) years, payable in seven installments of $150.00, each, and the repurchase price of $6,000, with interest at the rate of 8% from date of option to execution thereof, if exercised.
"(7) On February 12, 1966, this option was assigned by Joseph W. Fontenot to Dulan W. Fontenot for the recited consideration of $500. The original option was unavailable, therefore a copy was recorded.
"(8) On trial of the merits, plaintiff presented the testimony of Joseph W. Fontenot. He admitted on cross-examination and re-direct examination that the attorney and notary who had prepared the option indicated his concern over its validity because of the consideration recited for the granting of the option. There was in fact no note as recited in the option. Too, the recited consideration of $1,050.00 was an obligation which Joseph W. Fontenot had agreed to pay to Edison Manuel, regardless of the recitations contained in the deed translative of title to Manuel in the purchase of the Lodge. In short, Manuel was still to collect the balance due him on the prepaid rent.

*159 "(9) Payments totaling $750 had been made by Dulan W. Fontenot to Edison Manuel in the same manner as the Purple Peacock had paid Fontenot Building and Supply Co., save for lapses in a payment, and it is claimed by Dulan W. Fontenot that this was payment on the option and not on the existing debt to Manuel. The payments, however, represented by checks, were in the Court's opinion the repayment of the pre-paid rent, which amount was the existing balance due Manuel in pre-paid rent at the time he purchased the Lodge. Too, the evidence is to the effect that when Dulan Fontenot purchased the remaining interest of Joseph W. Fontenot, he assumed some outstanding debts of the Purple Peacock.
"Considering the evidence, the Court finds that the option is invalid for want of valuable consideration, and that the assignee thereof stands in the shoes of his assignor, hence, his action for specific performance and damages must fall."
We find manifest error in the conclusion set forth at paragraph numbered 8; that ". . . the recited consideration of $1,050.00 was an obligation which Joseph W. Fontenot had agreed to pay to Edison Manuel, regardless of the recitations contained in the deed translative of title to Manuel in the purchase of the Lodge. In short, Manuel was still to collect the balance due him on the prepaid rent." A like reference in paragraph number 9 is erroneous.
The February 4, 1966 deed by which Joseph Fontenot, his mother and his sister conveyed the Lodge to Edison Manuel recited a consideration of "... $6,000.00... cash in hand paid, the receipt of which is hereby acknowledged, and other valuable consideration, consisting of the pre-payment by Edison Manuel of the existing lease which he has on said property for the term of said lease." (Emphasis added.) This language states that part of the consideration paid for the Lodge by Manuel (to Joseph Fontenot, his mother and his sister) was a cancellation of Manuel's prepayment (of $1,050, representing seven monthly rentals) on his lease of the Lodge property.
We agree that Manuel was "still to collect" the $1,050 balance due him on the prepaid rent, but the new obligation to pay $1,050 was incurred by virtue of the February 5, 1966 option agreement which was signed at the same time the deed was executed. The option was granted ". . . for and in consideration of the price and sum of one thousand fifty and no/100 ($1,050.00) dollars, payable in seven (7) monthly installments of one hundred fifty and no/100 ($150.00) dollars, as evidenced by note granted herewith and paraphed `Ne Varietur' by me, Notary, to identify same herewith, receipt of which is hereby acknowledged...."
Edison Manuel's attorney and notary Donald Soileau, prepared and passed both instruments as authentic acts. Soileau, Edison Manuel and Joseph Fontenot all testified that they intended to make a valid option agreement. They discussed the need for a valid consideration and the deed shows Manuel's cancellation of the obligation to return his $1,050 in prepaid rent, and the incurring of a new obligation to pay $1,050 as consideration for the option. Donald Soileau also testified that he was concerned that the $6,000 consideration for the Lodge property was insufficient.
Manuel testified by deposition at Tr. 76 that Joseph Fontenot never asked for anything other than $6,000 for the property:
"A.... And then he asked me the next day if I'd give him an option.
(Note: At Tr. 92 Manuel stated that the sale and option were signed the same day.)
"Q. And what did you say, did you say yes?
"A. I told him yes, but I wanted to collect my Thousand and Fifty *160 ($1,050.00) Dollars. He told me him and Dulan would pay me for that. It was a personal debt, that they'd pay me.
"Q. In other words you said you'd go ahead and give him an option?
"A. I'd sign the option, yes.
"Q. If he'd pay you that money?
"A. Yes. If he'd pay me my personal debt."
At Tr. 87, Manuel testified:
"Q. Alright. Then you were agreeable toyou were willing to give him an option for three (3) years to buy the property back, is that correct?
"A. Well ...
"Q. Were you willing to or not willing to?
"A. Well, I was taking a chance like that I'd get my $1,050.00 back.
"Q. Yeah. But I mean were you willing to give him the option or were you not willing to give the option?
"A. Well I was willing so I could collect.
"Q. In other words, you were only willing in order to collect the $1,050.00?
"A. To collect mythe debt they owed me."
Manuel then admitted that he never loaned money to Dulan and that Dulan never said he would pay; but at Tr. 97, 98 and 99, Manuel testified that Joseph told him Dulan would help pay the $1,050.
At Tr. 113, Manuel explained:
"A. Well, the reason why I signed the option was this, it was to collect my personal debt they owed me, of One Thousand and Fifty and No/100 ($1,050.00) Dollars, that's why I signed. I thought it would help collect."
At trial Manuel testified at Tr. 402 as follows:
"Q. Isn't it a fact, Mr. Manuel, that when you and Joseph W. Fontenot agreed that you would buy the Lodge that you would give an option on the Lodge for Joe-Joe to buy it for three years, isn't that a fact?
"A. That's right.
"Q. Now, before you signed the option, and at the time that you signed it, did you want that option to be good or did you want it to be no good?
"A. Well, the thing wasmy interest to sign the option was to help collect my $1050.00, that was my main interest, so I didn't mind signing it, but then the lawyer told us
(Objection and question restated)
"A. My main interest was to help collect my $1050.00.
"BY THE COURT: Now, you will have to answer the question first.
"Q. I'm just asking you if you wanted that option to be good or you didn't want that option to be good.
"A. Well, it didn't matter.
* * * * * *
"A. Well, I didn't care.
"Q. So that you didn't mind if Joe-Joe got the option and could force you to sell it back to him for three years under the conditions of $6,000.00, and interest and so forth, right?
"A. That's right."
At Tr. 414, Manuel testified:
"Q. Isn't it a fact that Mr. Dulan Fontenot, shortly after you granted Joe-Joe the option, that you started getting checks

*161 "A. That's the reason, just like I told you before, the reason I signed the option was to try to collect that $1050.00 that Joe-Joe"
The instruments and the quoted testimony do not support Manuel's contention that the $1,050.00 was owed only as the original debt. Manuel made no attempt to explain why he cancelled the original $1,050 debt in the February 4, 1966 deed by which he acquired the Lodge.
The consideration for the option was Joseph Fontenot's agreement to pay $1,050 in seven equal monthly installments, and the payment thereof. The first five payments were made at $150 each and the final payment of $300 was deposited to Manuel's account before Dulan Fontenot sought to enforce his rights under the option agreement. There is no contention that the $1,050 was not receivedonly that it was due as repayment of the unearned advance rent and not as consideration for the option.
The parties are bound by their written agreements. The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery. LSA-C.C. Art. 2236. Indeed, absent fraud or error, parol evidence is inadmissible to vary the recitals in an authentic act. LSA-C.C. Art. 2276; Parol Evidence to Vary a Recital of Consideration, 3 La.L.Rev. 427; Admission of Parol Evidence to Annul an Authentic Act, 21 La.L.Rev. 680.
There was no proof of fraud. The parties extinguished the $1,050 debt in the deed dated February 4, 1966 and incurred a completely new $1,050 debt as consideration for the February 5, 1966 dated option.
An option to purchase property, to be valid, must be supported by consideration. LSA-C.C. Art. 2462; Glover v. Abney, 160 La. 175, 106 So. 735 (1926). An option is nothing more than an elective right that, when exercised, ripens into a binding contract to buy and sell. McMikle v. O'Neal, 207 So.2d 922 (La.App. 2 Cir. 1968). Should the option be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party. LSA-C.C. 2462. Although the right to specific performance is not absolute, it will generally be enforced in LSA-C.C. Art. 2462 "option-type" cases in those instances in which the promisor is legally able to comply with his engagement. Thompson v. Thompson, 211 La. 468, 30 So.2d 321 (1947). There is no legal impediment to Edison Manuel's compliance and he is therefore bound to render specific performance. Contracts to sell land are specifically enforceable, and the jurisprudence has generally awarded this remedy in such contracts. LSA-C.C. Art. 2462; Bandel v. Sabine Lumber Co., 194 La. 31, 193 So. 359 (1940).
On February 12, 1966, Joseph Fontenot, holder of the option to purchase the Lodge property, assigned the option to Dulan Fontenot. All rights acquired by a heritable obligation may be assigned. LSA-C.C. Art. 2009. The assignee of an option stands in the shoes of his assignor. J. F. Auderer Laboratories v. Deas, 223 La. 923, 67 So.2d 179 (1953). The option was valid as to Joseph Fontenot; therefore, it was valid as to his assignee, Dulan Fontenot.
In addition to specific performance, Dulan Fontenot is entitled to the fruits and revenues derived by Manuel from the property from January 13, 1967 (the date the transfer should have been completed). LSA-C.C. Art. 2486; Bandel v. Sabine Lumber Co., 194 La. 31, 193 So. 359 at 361, 362 (1940). Defendant Manuel was bound to transfer title to the Lodge on January 13, 1967. It was established that Manuel received a rental of $150 per month for the Lodge property. Additionally, when the deed and option were executed by the parties, Manuel extracted an agreement from *162 Joseph Fontenot that should the option be exercised, Manuel could lease the Lodge property for a ten year period at a rental of $150 per month. Manuel so testified at his pretrial deposition, but at trial he stated that this lease agreement was never confected and was not binding.
There was substantial testimony concerning Dulan Fontenot's proposed use of the Lodge property and his anticipated profits, but this was too speculative to justify an award. Dulan's claim for substantial sums which Manuel earned from operation of a juke box in the Lodge are also disallowed as not proved.
Dulan Fontenot is entitled to recover $150 per month for the period beginning January 13, 1967 through the date that Manuel conveys the Lodge property in accordance with the terms of the option. The 8% interest on the $6,000 consideration which accrues to Manuel under the terms of the option agreement, accrued to but not beyond January 13, 1967, the date Manuel refused to comply with his obligation under the option. We disallow interest on the $150 per month which might accrue to Dulan Fontenot as offset by the costs of maintaining the Lodge property together with the taxes which have been paid.
It is ordered, adjudged and decreed that Edison Manuel is to comply with the terms of the February 5, 1966 option and convey the Lodge property to Dulan Fontenot, the present holder of the right to acquire that property under terms of the option. It is further ordered, adjudged and decreed that Dulan Fontenot is awarded judgment in the sum of $150 per month for each month from January 13, 1967 until the Lodge property is transferred to Dulan Fontenot in accordance with the terms of the option. All costs of court at trial and on appeal are assessed to defendant Edison Manuel.
Reversed and rendered.

ON APPLICATION FOR REHEARING
FRUGÉ, Judge (dissenting).
Being of the opinion that the trial court had fallen into error, I concurred with the majority opinion of this court on the original hearing of this appeal. However, after careful reconsideration of the complex factual situation in the instant case, I feel constrained to dissent from the majority's denial of the defendant's application for a rehearing.
I find, as did the trial court, that the purported option granted by Edison Manuel to Joseph W. Fontenot is invalid for lack of consideration; this conclusion I reach from thorough consideration of the evidence and circumstances surrounding the disputed transaction.
The only issue for this court to determine follows: Did the trial judge commit manifest error in holding that the option suffered from a defective want of consideration?
The majority finds manifest error in the following finding by the trial court: "the recited consideration of $1,050.00 was an obligation which Joseph W. Fontenot had agreed to pay Edison Manuel, regardless of the recitations contained in the deed translative of title to Manuel in the purchase of the Lodge." In reversing the findings of the trial court and ordering Edison Manuel to comply with the terms of the February 5, 1966, option, the majority follows an overly technical approach which works an iniquitous result. I can agree with neither the approach nor the result.
Finding erroneous conclusions by the majority, and bearing in mind at all times the great weight which attaches to findings by the trial judge, I respectfully dissent from a denial of a rehearing.