427 So.2d 692 (1983)
Mitchell SERIO
v.
STEWART INVESTMENTS, INC.
No. CA 0219.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1983.
Writ Denied April 5, 1983.
Herman, Herman & Katz, Maury A. Herman and Matthew P. Chenevert, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, R. Patrick Vance and Michael L. Williams, New Orleans, for defendant-appellant.
Before LOBRANO and WARD, JJ., and SWIFT, J. Pro Tem.
G. WILLIAM SWIFT, Jr., Judge Pro Tem.
This is an appeal from a judgment of the district court declaring that a lease confected between Mitchell Serio, plaintiff, and Stewart Investments, Inc. (Stewart Investments), defendant, is null and void, ordering defendant and intervenor, Michael Kiene, to vacate the premises and awarding attorney's fees in the amount of $500.00. From that judgment, which we affirm, Stewart Investments appeals.
Mitchell Serio owns a lot of ground and a building at 133 St. Charles Avenue in New Orleans. On December 15, 1974, Mr. Serio *693 leased his property to Stewart Investments. The latter then owned and operated 16 "Bonanza" Steakhouses throughout the State of Louisiana.
After the lease had been executed by Serio and the corporation, but at the end of the same document, two other parties, Dr. Charles J. Stewart, the president of the company, and his wife became personal sureties on the lease in their individual capacities by signing a paragraph which reads in part as follows:
"AND NOW COMING DIXIE STEWART, wife of/and DR. CHARLES J. STEWART WHO ARE MADE PARTIES to this contract of lease and are bound with Lessee (Stewart Investments, Inc.) with Lessee IN SOLIDO for the faithful execution of all the obligations to be performed on the part of the Lessee (Stewart Investments, Inc.) or Sub-Lessee...." (Emphasis supplied)
Dr. and Mrs. Stewart were not made parties to this litigation and there is no indication in the record that they contend they have been released from these personal obligations.
Stewart Investments operated a "Bonanza" restaurant at that address from 1974. On December 15, 1979, the lease was renewed for another five-year term to end in 1984. On July 31, 1981, Stewart Investments entered into an agreement entitled "Bill of Sale and Assignment" with Michael Kiene which included the premises at 133 St. Charles Avenue. The owner-lessor was not informed of the transaction until after it had occurred. When he was informed, Serio requested information relative to Kiene's identity, his last three years financial statements, the financial arrangements concerning the transfer of the Bonanza stores and Kiene's past history of experience in operating food businesses. Those inquiries were never answered.
Clause 15 of the lease provides as follows:
"With the written permission of Lessor, which shall not be unreasonably withheld, the Lessee shall have the right to sublease the demised premises in whole or part, provided, however, that regardless of any such sublease, the Lessee shall remain fully liable for the performance of all of the terms and covenants of this agreement ...." (Emphasis supplied)
Appellant, Stewart Investments, contends that because the transfer of the lease to Mr. Kiene was an assignment, wherein the lessee retained no interest in the lease, as distinguished from a sublease, and as Clause 15 expressly prohibits only subleasing without the written consent of the lessor, the lessee had the right to assign the lease without such consent under La. C.C. Art. 2725. On the other hand, appellee Serio contends that this clause interdicts an assignment as well as a sublease and that the lease has been violated by the attempted transfer to Kiene.
In Thriftee Oil Co. v. Partin, 209 So.2d 557 (La.App.2 Cir.1968), the Second Circuit Court of Appeal discussed the rules of interpretation applicable to La.C.C. Art. 2725:
"Basic to a resolution of the issue is the meaning of Article 2725 of the Louisiana Civil Code:
`The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
`The interdiction may be for the whole, or for a part; and this clause is always construed strictly.'
"The jurisprudence under this article has developed two rules of interpretation which must be dealt with in the instant case. The first of these is that the words `assignment' and `sublease' have separate and distinct connotations. As stated in J.F. Auderer Laboratories v. Deas, 223 La. 923, 67 So.2d 179, 45 A.L.R.2d 1026 (1953):
`Article 2725 of the LSA-Civil Code and the established jurisprudence of this court recognizes that there is a difference between an assignment and a sublease. It was tersely stated in our recent decision in Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149, 153, "* * * that the distinction between an assignment on the one hand and a sublease *694 on the other is that in an assignment the original lessee transfers all of his rights in the lease; whereas in a sublease he retains some control or interest in it." See also Smith v. Sun Oil Co., 165 La. 907, 116 So. 379; Johnson v. Moody, 168 La. 799, 123 So. 330; Swope v. Holmes, 169 La. 17, 124 So. 131 and Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.'"
* * * * * *
"The second rule to which we referred previously relates to the `strict construction' provision in the second paragraph of Article 2725. This has been interpreted to mean a strict construction against the lessee which is contrary to the usual rule that the provisions of a contract must be strictly construed against him who prepares it. In Owens v. Oglesby, (La.App. Orl.1960) 123 So.2d 521, the court relied on previous Supreme Court cases interpreting the concluding clause of Article 2725, stating:
`The Supreme Court in interpreting the concluding clause of the codal article has held that the prohibition to sublease is always construed strictly against the lessee. Cordeviolle v. Redon, 4 La.Ann. 40; Henderson v. A. Meyers & Bro., 45 La.Ann. 791, 13 So. 191. Moreover the covenant in the lease against subletting is for the benefit of the landlord because it is regarded as for his interest to determine who shall be a tenant of his property. Montecon v. Faures, 3 La.Ann. 43; Marcuse v. Shapiro, 1 La.App. 135; Bailey v. Allen E. Walker & Co., 290 F. 282, 285, 53 App.D.C. 307.'"
The trial judge in the instant case found that the parties intended by Clause 15 that the prohibition against a sublease included a prohibition against an assignment. In light of the evidence and testimony presented, we cannot say that he was manifestly in error. The very purpose of putting such a restriction in the lease was to allow Mr. Serio to retain control over who would occupy his building. This, coupled with the rule of strict construction of La.C.C. Art. 2725 against the lessee, has convinced this court that the trial judge was correct.
Additionally, we might point out that La. C.C. Art. 2725 speaks of "THE right" and "THIS power," using the singular forms instead of "the rights to underlease, or even to cede ... unless these powers have been expressly interdicted." The use of the singular is consistent with the rule of interpretation that the prohibition of the lesser also prohibits the greater. "Underlease" or "sublease" is the transfer of only a part (the lesser) and "cede" or "assign" is the transfer of all (the greater). Accordingly, there is only one right which includes the lesser and greater thereof.
Although Planiol acknowledges that the French courts have held otherwise, our interpretation is consistent with his view. Article 1717 of the Code Napoleon, from which our C.C. Art. 2725 is derived verbatim, is discussed in Planiol, Vol. 2, Part 2, sec. 1752:
"In principle the lessee has the right to sublet or to assign his lease (Art. 1717) but this liberty can be withheld from him by a clause to the contrary.
"What is the effect of such a contract? There is no doubt as to its extent if it expressly states that the lessee can neither assign nor sub-lease without the consent of the lessor. But ordinarily the parties only employ one of the two expressions (and this inveterate habit is an additional proof of the real unity of the two contracts). It may be asked whether one of the two is forbidden, whether the other is permitted. In my view, a distinction should be made. The prohibition against sub-leasing should for a stronger reason carry with it the prohibition to assign the lease, which is a more serious contract; but the prohibition to assign the lease leaves to the lessee the faculty of subleasing, which does not in fact change the person of the principal lessee." (Emphasis supplied)
We recognize that our decision appears to conflict with Thriftee. That case, of course, is persuasive, but we note that of the three *695 Second Circuit judges on the panel, one concurred and one dissented. Also, it has not been cited as authority in any reported case in our jurisprudence since rendition nearly 15 years ago.
The trial judge awarded plaintiff attorney's fees, as authorized in the lease, in the amount of $500.00. He now contends in brief that he is entitled to an additional award for such services on appeal. However, as plaintiff-appellee neither appealed nor answered the appeal the judgment cannot be amended in his favor by us. La.C. C.P. Art. 2133.
For the foregoing reasons, the judgment of the district court is affirmed at defendant-appellant's costs.